## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **OCEAN STATE TACTICAL, LLC d/b/a BIG BEAR HUNTING AND FISHING SUPPLY; JONATHAN HIRONS; JAMES ROBERT GRUNDY; JEFFREY GOYETTE; and MARY BRIMER** <br> *Plaintiffs,* <br><br> **v.** <br><br> **STATE OF RHODE ISLAND,** <br> *Defendant.* | : <br> : <br> : <br> : <br> : <br> : <br> :     **Case No.: 1:22-cv-00246-JJM-PAS** <br> : <br> : <br> : <br> : |

### PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT

**NOW COME** the Plaintiffs, Ocean State Tactical, LLC d/b/a Big Bear Hunting and Fishing Supply (*hereinafter*, individually "Big Bear" and/or the "Business Plaintiff"), Jonathan Hirons (*hereinafter*, individually "Mr. Hirons"), Mary Brimer (*hereinafter*, individually "Ms. Brimer"), James Robert Grundy (*hereinafter*, individually "Mr. Grundy"), and Jeffrey Goyette (*hereinafter*, individually "Mr. Goyette") (*hereinafter*, the four (4) individual Plaintiffs are referred to collectively as "Citizen Plaintiffs") (*hereinafter*, Business Plaintiff and Citizen Plaintiffs, are referred to collectively as the "Plaintiffs"), and hereby bring this Application for a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65, and seek equitable relief. In support of this Motion, the Plaintiffs state as follows:

### *Introduction*

The Plaintiffs in this matter seek a declaration that the recently passed Rhode Island House Bill H6614 which was codified into law on June 21, 2022 as Chapter 47.1 of the Rhode Island General Laws "Large Capacity Feeding Device Ban of 2022" (*hereinafter*, the "Magazine Ban Law") is unconstitutional as violative of the Second and Fifth Amendments to the Constitution of

the United States.  This law as enacted: 1) makes it unlawful for citizens to possess, purchase, transfer, etc. "Large Capacity feeding devices" (i.e. those magazines capable of holding more than ten (10) rounds of ammunition) (*hereinafter*, "Standard Capacity Magazines"); and, 2) prohibits anyone (subject to a few exempt persons and/or entities) within the State of Rhode Island from retaining possession after one hundred and eighty (180) days of the Magazine Ban Law's passage, of any magazines capable of holding more than ten (10) rounds of ammunition which were lawfully purchased prior to the date of the Magazine Ban Law's enactment.

This application seeks a Temporary Restraining Order, and/or a Preliminary Injunction to prevent the Magazine Ban Law's enforcement until such time as the Court has had an opportunity to rule upon the Constitutionality of the law. The status quo would be preserved by simply allowing current law-abiding citizens to retain their property during the pendency of this matter. Alternatively, without a Temporary Restraining Order preserving the status quo, any violation of the Magazine Ban Law, including the failure to forfeit any Standard Capacity Magazine to law enforcement, to permanently modify any Standard Capacity Magazine to accept no more than ten (10) rounds, or to transfer any Standard Capacity Magazine to a Federally Licensed Firearms Dealer ("FFL") within one hundred and eighty (180) days of the Magazine Ban Law's passage, carries a punishment "[b]y ***imprisonment of not more than five (5) years***, or by a fine of up to five thousand dollars ($5,000), and the large capacity feeding device shall be subject to forfeiture." See **<u>Exhibit A</u>**, a true and accurate copy of the Magazine Ban Law attached hereto.

The Magazine Ban Law violates the Second Amendment to United States Constitution, and also violates the Takings Clause of the Fifth Amendment to the United States Constitution, because it results in the mandatory dispossession of Standard Capacity Magazines which were ***lawfully acquired prior to the effective date of the Magazine Ban Law.***  This law is a direct

governmental taking of private property without providing just compensation. By banning possession—in addition to sales and use—of magazines that were lawfully acquired and are presently lawfully possessed, the Magazine Ban Law constitutes a physical appropriation of property without just compensation that is *per se* unconstitutional. See *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015).

The Magazine Ban Law seeks to obviate a takings clause issue by legislating under the guise of "public safety" during a time of public fear, media outrage, and great political discourse. However, the banning of Standard Capacity Magazines has shown absolutely no correlation to the reduction of gun violence, nor the reduction in crime rates. See Chrstopher S. Koper et al. *An Updated Assessment of the Federal Assault Weapons Ban: Impacts on Gun Markets & Gun Violence, 1994-2003*, Rep. to the Nat'l Inst. Of Justice, Us. Dep't of Justice 96 (2004). In a study conducted by the Department of Justice in 2004 on the effects of crime during the Assault Weapons Ban of the Clinton Administration, the DOJ found there was no discernable reduction of gun violence during the Assault Weapons Ban. However, such discussion of the reduction in crime and effectiveness of stringent gun control does not change the well-established principle of constitutional rights relative to the Fifth Amendment, that ***the government may not take private property for public purposes without providing just compensation***.

### *Standard of Review*

A court will issue a temporary restraining order, or a preliminary injunction, to preserve the status quo and prevent irreparable harm until the court has had an opportunity to rule on the merits of the Complaint. *Rodriguez v. Wall*, C.A. No. 00 – 90 T, 2000 U.S. Dist. LEXIS 14447 (D.R.I. Aug. 21, 2000). Thus, a moving party must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the Complaint. See *Penn. v.*

*San Juan Hospital., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975); *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994). The basic four-factor legal standard is the same for a temporary restraining order as a preliminary injunction. *Harris v. Wall*, 217 F.Supp. 3d 541, 553 (D.R.I. 2016) (citing *OfficeMax Inc. v. Cty. Qwick Print, Inc*., 709 F.Supp.2d 100, 106 (D. Me. 2010); *Brennan v. Wall*, C.A. No. 08–419S, 2009 WL 196204, at *2 (D.R.I. Jan. 26, 2009)). That is, the moving party must demonstrate: (1) a substantial likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is withheld; (3) a favorable balance of hardships; and (4) a fit (or lack of friction) between the injunction and the public interest. Id. (citing *Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003) (preliminary injunction); *Brennan v. Wall*, C.A. No. 08-419S, 2009 WL 196204 at *2 (D.R.I. Jan. 26, 2009) (temporary restraining order).

As will be set forth more fully below, the status quo would be preserved by the issuance of a Temporary Restraining Order and Preliminary Injunction as law abiding property owners would continue to own their property as they have, without incident, for decades prior to the passage of this law.  The Plaintiffs are likely to succeed on the merits of their claim, as: (i) the law in question violates the Second Amendment of the U.S. Constitution as consistently held by Federal Courts throughout the country, and as recently foreshadowed by the U.S Supreme Court in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022); and (ii) constitutes a clear taking of private property without just compensation in violation of the Fifth Amendment to the U.S. Constitution. There is a significant risk of irreparable harm to the Plaintiffs, since they will unlawfully be divested of their private property in violation of their Constitutional Rights.  The hardships greatly balance in the favor of the Plaintiffs as the State of Rhode Island will not be able to show that there is an identifiable link between the imposition of a ban on Standard Capacity Magazines and a reduction in incidents of mass shooting deaths.  Finally, the protection of well-

established core Constitutional rights is more in line with the greater public interest than the negligible impact this law will have on crime.  The Magazine Ban Law represents nothing more than a symbolic gesture, or a political posture, rather than a narrowly tailored effort to address a compelling governmental interest.

### *General Allegations*

The Plaintiffs bring this Application to cease the enforcement and applicability of the Magazine Ban Law against the Plaintiffs, and any other individual(s) or entity(s), until such time as this Court has had an opportunity to make a decision on the constitutionality of the Magazine Ban Law as it relates to the claims asserted in the Plaintiffs' Complaint.

**I-**     **Likelihood of Success on The Merits.**

     **a. *The Magazine Ban Law Is an Unconstitutional Taking in Violation of The Fifth Amendment Takings Clause.***

As previously stated, the Magazine Ban Law would require all individuals (absent some limited exceptions for law enforcement, active military, etc.) to disgorge themselves of all Standard Capacity Magazines in their possession, encompassing those Standard Capacity Magazines lawfully acquired and owned prior to the Magazine Ban Law's passage, within one hundred and eighty (180) days of the Magazine Ban Law's passage, or face felony charges, and forfeiture of the Standard Capacity Magazine. See **Exhibit A**. The methods in which the Magazine Ban Law allows for forfeiture include: 1) permanent modification of the Standard Capacity Magazine so that it cannot hold more than ten (10) rounds of ammunition; 2) surrender of the Standard Capacity Magazine to the police department in the city or town where the person resides, or the Rhode Island State Police; or 3) transfer or sell the Standard Capacity Magazine to a federally licensed firearms dealer or person outside of the State, who lives in a state which allows Standard Capacity Magazines. See **Exhibit A**.

The Supreme Court has interpreted the takings clause to apply to two (2) types of governmental action, one of which is a "physical taking" of private property and the other is a regulatory taking. See *Horne v. Dep't. of Agric.*, 135 S. Ct. 2419, 2427 (2015). The Magazine Ban Law comprises both a physical taking of private property, and in the case of the Business Plaintiff, a regulatory taking.

### 1) *Physical Taking of Private Property of the Citizen Plaintiffs*

The Citizen Plaintiffs are likely to succeed on their claims that the Magazine Ban Law is wholly violative of the Takings Clause of the Fifth Amendment to the United States Constitution, as they are being forced to disgorge themselves of lawfully acquired private property without any provision that allows for them to retain their property, nor any compensation for forfeiting such property.  The Takings Clause to the Fifth Amendment of the United States Constitution, which applies to the States through the Fourteenth Amendment, provides "nor shall private property be taken for public use, without just compensation." *U.S. Const. Amend. V.*

What constitutes a "physical taking" has been plainly defined by the Supreme Court, and occurs when "the government physically takes possession of an interest in property for some public purpose" and "dispossesses the owner" of that personal property, even if dispossessed under the guise of public good. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency,* 535 U.S. 302, 322, 325 n.19 (2002). In its contemplation regarding what type of property applies to the rule of physical takings, Supreme Court precedent expressly states: "[N]othing in the text or history of the Takings Clause, or our precedents, suggests that the rule is any different with it comes to appropriation of personal property. The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." *Horne*, 135 S. Ct. at 2426.

The Citizen Plaintiffs are all lawful owners of several Standard Capacity Magazines and acquired those magazines prior to the enactment of the Magazine Ban Law. See **Exhibit B**, a true and accurate copy of the Affidavit of Mr. Hirons attached hereto. The Citizen Plaintiffs, by way of passage of the Magazine Ban Law, will now be forced to dispossess themselves of their Standard Capacity Magazines by one of the three (3) methods provided in the Magazine Ban Law within one hundred and eighty (180) days of the Magazine Ban Law's passage. See **Exhibit B**, at ¶ 3.

**The State's mandate that the Citizen Plaintiffs forfeit their Standard Capacity Magazines is not accompanied by any compensation from the State for requiring the Citizen Plaintiffs to do so**. In fact, the Magazine Ban Law expressly denies any grandfathering provisions, clause, rights, etc. whereby the Citizen Plaintiffs would be permitted to retain their private property which was lawfully acquired prior to the Magazine Ban Law's enactment. The State's reasoning behind its refusal to allow the Citizen Plaintiffs to retain their lawfully acquired private property was out of a concern for public safety, with law-makers who supported the Magazine Ban Law making statements such as: "Making high-capacity magazines illegal to sell and possess will enhance public safety." See Statement of Senator Cynthia A. Coyne, Official State of Rhode Island Website, *Governor McKee Signs Crucial Legislative Package to Strengthen Gun Safety Laws*, June 21, 2022. However, legislation based on speculative concerns for public safety has been defeated time and time again in this country when law-makers attempt to deprive their constituents of their constitutional rights in direct contrast of the oath which they took to protect those rights. As stated in *Horne*, "[T]he Government has broad powers but the means it uses to achieve its ends must be 'consistent with the letter and spirit of the constitution.' *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 421, 4. L. Ed. 579 (1819). As Justice Holmes noted, 'a ***strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than***

*the constitutional way.' Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416 43 S. Ct. 158, 67 L. Ed. 322 (1922)." *Horne*, 135 S. Ct. at 2428.

In not providing compensation for their taking of private property, and failing to provide any grandfathering rights to the Citizen Plaintiffs (who acquired their Standard Capacity Magazines well before the enactment of the Magazine Ban Law), the State of Rhode Island is violating the Takings Clause of the Fifth Amendment to the United States Constitution, as the State is taking private property without providing just compensation.

The Legislature has suggested the Magazine Ban Law does not constitute a physical taking, justifying the forfeiture by positing that the Citizen Plaintiffs have options to sell their Standard Capacity Magazines to an FFL, or to an individual or entity in a state that allows those types of magazines. However, these arguments run afoul of previously established Supreme Court precedent regarding governmental taking of private property.

The Magazine Ban Law requires a total "physical dispossession" of the Citizen Plaintiffs' property, which requires government compensation. See *Tahoe-Sierra*, 535 U.S. at 324 n.19 (holding a physical taking dispossesses the owner of property); see also *Nixon v. United States*, 978 F.2d 1269, 1287 (D.C. Cir. 1992) (a statute that "physically dispossessed" property owner resulted in a *per se* taking"); see also *Penn Central Transp. Co. v. New York City*, 438, U.S. 104, 214 98 S. Ct. 2646, 57 L. Ed. 2d 631, 868 (1978) ("[s]uch an appropriation is perhaps the most serious form of invasion of an owner's property interests . . . depriving the owner of the rights to possess, use and dispose of" their property).

As such, the State cannot ignore precedent established through the decisions of the highest court, and further cannot justify an assertion of constitutionality where the State demands that  the

Plaintiffs physically dispossess themselves of lawfully acquired private property without receiving just compensation.

### 2)  *Regulatory Taking of the Business Plaintiff's Private Property*

Licensed FFLs (a/k/a the Business Plaintiffs) are permitted to keep, to be in possession of, and acquire Standard Capacity Magazines. However, the Business Plaintiff is no longer permitted to sell these Standard Capacity Magazines in its store, and together with other licensed FFLs within the State, is now in possession of thousands of Standard Capacity Magazines which they are unable to sell in their Rhode Island store front.  The Business Plaintiff is likely to succeed on its challenge against the Magazine Ban Law, as it constitutes a clear and unequivocal regulatory taking in violation of the Fifth Amendment's Takings Clause as applied to FFLs. The Business Plaintiff is a gun store owner, and a Federally Licensed Firearms Dealer (FFL), which owns a store front located at 401 Putnam Pike, Harmony, Rhode Island. The Business Plaintiff does the majority of its business out of its store via in-person sales. See **Exhibit C**, a true and accurate copy of the Affidavit of Andre Mendes, who is an owner and principal of Big Bear, attached hereto.

Though the Magazine Ban Law would not prevent any FFL from possession, purchase, transfer out of state, etc. of any Standard Capacity Magazines, it would deprive them of all economically beneficial use of their property, as they would no longer be able to use this inventory for the sole use it was intended for when purchased, constituting a "regulatory taking" in violation of the Fifth Amendment's Takings Clause.

The Supreme Court has recognized a category of taking whereby "government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster . . . if regulation goes too far it will be recognized as a taking." *Lingle v.*

*Chevron, U.S.A. Inc.*, 544 U.S. 528, 125 S. Ct. 2074, 2081 (2005) (quoting *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 67 L. Ed. 322, 43 S. Ct. 158 (1992).

The Supreme Court in *Penn Central Transportation Co. v. City of New* York, 98 S. Ct 2646 (1978) set forth a three-point balancing test to evaluate whether a regulation "goes too far" so as to constitute a taking.  The three considerations are: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with "distinct investment backed expectations"; and (3) the character of the governmental action involved.  *Id.* at 2659.  The Court stated that even a statute that substantially furthers important public policy may so frustrate a distinct investment backed expectation so as to amount to a taking.  *Id.* at 2661.

Here, the Magazine Ban Law would not only deprive the Business Plaintiff of a substantial portion of its inventory which is now rendered economically worthless, but would also deprive the Business Plaintiff of a substantial portion of their revenue without providing any kind of just compensation whatsoever.  The Business Plaintiff has a certain and identifiable investment backed expectation in the sale of its inventory.  This inventory is standard to the industry and comes pre-packaged with firearms direct from the manufacturer.  It was never within the Business Plaintiff's expectations that the purchase and sale of a legal product would later be subject to regulations so onerous so as to make the product unsellable.

The Business Plaintiff conducts over ninety-five percent (95%) of its sales and revenue through its brick-and-mortar store-front sales, with a very small portion of its sales (and clientele) conducted through online retail. See **Exhibit C,** at ¶¶ 5-6. The Magazine Ban Law now prohibits the Business Plaintiff from selling Standard Capacity Magazines in its inventory to customers at its store in Harmony, Rhode Island, thereby depriving the Business Plaintiff of all economically beneficial use of its inventory purchased with the sole intention of selling said property. The

Magazine Ban Law fails to provide any kind of consideration for the established businesses such as the Business Plaintiff, who now has to engage in a different sector of commerce to dispose of its unsellable inventory.

Like in *Horne*, where the government contended that the requirement imposed upon raisin farmers to reserve a certain portion of their raisin crop for a government program was not a taking, see *Horne*, 135 S. Ct. at 2430, the Supreme Court disagreed with the government's reasoning that the raisin farmers were "voluntarily choosing" to participate in the raisin market. The government's logic was that "If the raisin growers don't like it, they can plant different crops." *Id*. However, the Supreme Court held the program was indeed a Fifth Amendment taking, reasoning that property rights cannot be so easily manipulated by the government.

Here, the State cannot simply expect that a small business whose annual revenue includes the sale of a product that was made unlawful overnight can readily adapt to the change that they implemented without providing the Business Plaintiff any viable economic alternative. The Business Plaintiff's Standard Capacity Magazine inventory is not only a staple of what the typical gun store sells, but tens of thousands of dollars of inventory is now rendered virtually worthless under the Business Plaintiff's business model. The Magazine Ban Law essentially expresses to the Business Plaintiff and other FFLs in Rhode Island that they now must figure out an alternative way to sell them, or sell something else, without any regard to what resources the Business Plaintiff have to accomplish this, how it will affect the jobs of employees that work there, or how it will affect the predictability of the future health of the Business Plaintiff and other FFLs in Rhode Island.

The Business Plaintiff further suffers a regulatory taking when considering there exist several models of handguns which the Business Plaintiff has in stock right now that they: either 1)

cannot readily obtain magazines that hold ten (10) rounds or less for; or 2) there are no magazines in production for those models that hold ten (10) rounds or less. See **Exhibit C**, at ¶ 7.

Therefore, not only will the sales of magazines be halted without just compensation, but also the sales of firearms that will not be able to accommodate magazines capable of holding ten (10) rounds or less will also be effectively stopped without any compensation.

### b. The Magazine Ban Law Is Violative of The Plaintiffs' Second Amendment Rights.

The Plaintiffs can demonstrate to this Court that there is a substantial likelihood of success on the merits in this challenge, as the Magazine Ban Law is facially violative of the Plaintiffs' Second Amendment Rights under the United States Constitution.

The Second Amendment provides ". . . the right of the people to keep and bear Arms, shall not be infringed." *U.S. Const. Amend II*. The Second Amendment protects those "arms" that are typically possessed by law-abiding citizens for lawful purposes." *District of Columbia v. Heller*, 533 U.S. 570, 624-25 (2008). Even prior to the recent Supreme Court Decision handed down in *N.Y. Rifle & Pistol Assn., Inc. v. Bruen*, Federal Courts have held that the Second Amendment's protection extends to ***ammunition and magazines*** required for the exercise of the right to keep and bear arms. *Fyock v. City of Sunnydale*, 799 F.3d 991, 998 (9th Cir. 2015). Even in keeping the decision in *Fyock* in mind, *Bruen* substantially expanded the protection of magazines and firearms under the Second Amendment, by eliminating a prior two-part test that had been used in Federal Courts on Second Amendment challenges. The Supreme Court in *Bruen* analyzed the history of the Second Amendment, and expressly rejected the further application of the means-end scrutiny analysis. See *N.Y. Rifle & Pistol Assn., Inc. v. Bruen*, No. 20-843, 2022 U.S. LEXIS 3055 (June 23, 2022).

The Court stated in *Bruen*, "[W]e reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearms regulation."). *Bruen* eliminated the two-part test, and limited Courts to asking "is this regulation in conformance with our historical treatment of the Second Amendment?"

Standard Capacity Magazines are extremely common. Of the five (5) best-selling handguns in America, two of them: 1) the Glock 19, and 2) the Kel-Tec PMR-30, both come standard with fifteen (15) and thirty (30) round magazines. See Rich Duprey, "*The 5 Best-Selling Handguns of 2017,*" *The Motley Fool,* December 2017. Further, almost all new sporting rifles come standard with Standard Capacity Magazines from the manufacturer, as well as most semi-automatic handguns. Standard Capacity Magazines are common in the shooting and the firearms ownership world, and are nothing new or out of the ordinary. See *Bruen*, No. 20-843, 2022 U.S. at 25-26. (where the Supreme Court stated "we found it fairly supported by the historical tradition the carrying of 'dangerous and unusual weapons' that the Second Amendment ***protects the possession and use of weapons that are in 'common use at the time'***").

These Standard Capacity Magazines are, and have been in common use for decades, as evidenced by all Citizen Plaintiffs being in lawful ownership of several Standard Capacity Magazines. See **Exhibit B**, at ¶ 2.

### c. *The Magazine Ban Law Is Violative of The Plaintiffs' Due Process Rights Under The Fourteenth Amendment's Due Process Clause.*

The Magazine Ban fails to pass any heightened level of judicial scrutiny, be it intermediate or strict. The Due Process Clause of the Fourteenth Amendment provides that a State shall not deprive any person of life, liberty, or property, without due process of law. *U.S. Const. Amend*

*XIV, § 1*. Not only does the Magazine Ban Law fail both heightened forms of scrutiny, *i.e.* it is not the least restrictive means necessary that is narrowly tailored to achieving a compelling, and/or important government interest, but it is impermissibly vague and overbroad.

Section 11-47.1-3. (b)(1)(i) provides that a person in possession of a Standard Capacity Magazine after the one hundred and eighty (180) days from the date of the Magazine Ban Law's passage who "Permanently modifies the large capacity feeding device such that it cannot hold more than ten (10) rounds of ammunition'" is exempt from the Magazine Ban Laws. See **Exhibit A**. However, the Magazine Ban Law does not define whatsoever what constitutes "Permanent Modification" of a Standard Capacity Magazine, leaving great ambiguity to the individual as to what "Permanent Modification" entails, thus running afoul of the Due Process Clause.

The void-for-vagueness doctrine requires that a statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited, and, in a manner that does not encourage arbitrary and discriminatory enforcement. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, n. 5 (1982); *Smith v. Goguen*, 415 U.S. 566 (1974); *Grayned v. City of Rockford*, 408 U.S. 104 (1972); *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972); *Connally v. General Construction Co.*, 269 U.S. 385 (1926).

Here, the Magazine Ban Law clearly does not define what conduct is prohibited and what conduct is permissible when expressing the exception for "Permanent Modification". This exception leaves open vast discretion to law enforcement as to what their individual definition of "Permanent Modification" entails, and subjects the citizen who makes a good faith attempt to permanently modify their Standard Capacity Magazine for the purpose of conforming his or her conduct to law, but fell short of an arbitrarily defined requirement, to a felony and the potential of up to five (5) years in prison.

**II-      The Plaintiffs Will Suffer Irreparable Harm if the Court Denies Injunctive Relief.**

"[T]he prime prerequisite for injunctive relief is the threat of irreparable future harm". *National Truck Carriers v. Burke*, 608 F.2d 819, 824 (1st Cir. 1979). The harm cannot be speculative, and subjective apprehensions and predication cannot establish immediate threat of irreparable harm. *In Re Rare Coin Galleries of America, Inc*., 862 F.2d 896, 901 (1st Cir. 1988).

Of course, should this Court concur with the Plaintiffs that the Magazine Ban Law is a clear violation of several of the Plaintiffs' constitutional liberties, then the State's continued recognition of the Magazine Ban Law as valid statutory law is in and of itself irreparable harm. See *Jernigan v. Crane*, 64 F. Supp. 3d 1260, 1288 (E.D. Ark. 2014) (citing *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)) (holding that deprivation of constitutional rights "***unquestionably constitutes irreparable harm***."); see also *A.H. by & through Hester v. French*, 985 F.3d 165, 184 (2d Cir. 2001) ("denial of a constitutional right ordinarily warrants a finding of irreparable harm, even when the violation persists for 'minimal periods' of time.").

Further, should the Magazine Ban Law's one hundred and eighty (180) day time clock for turn-ins continue to run during the pendency of this suit, the Plaintiffs (and other citizens) will suffer irreparable harm whereby: 1) the Citizen Plaintiffs may turn in their Standard Capacity Magazines out of fear of prosecution prior to the one hundred and eightieth (180th) day, and prior to a determination from this Court on the constitutionality of the Magazine Ban Law; and 2) the Business Plaintiff will continue to suffer decreased sales, canceled orders, and substantial costs incurred[1] relative to obtaining alternative magazines to supplement the Standard Capacity Magazines that come stock with most new sporting rifles and semi-automatic handguns.

---

[1] It is important to note that the one hundred and eighty (180) day grace period applies to Standard Capacity Magazines acquired ***prior to*** the effective date of the Magazine Ban Law only. Thus, the Business Plaintiff cannot sell any Standard Capacity Magazines that come new in the box of any new firearms after the effective date of June 21, 2022

As of June 30, 2022, the Supreme Court remanded all pending Second Amendment challenges back to the lower courts to apply the new standard established in *Bruen*. Thus, it is especially important that this injunction is granted, because the new standard established in *Bruen* will likely determine the constitutionality of the Magazine Ban Law in favor of the Plaintiffs, whereby the Court will no longer be permitted to review the constitutionality of the Magazine Ban Law through the justification of applying the "means-end" scrutiny test previously applied to Second Amendment legislation prior to *Bruen*.[2]

If the Magazine Ban Law were to be enforced unfettered and unchallenged under the present text of the Magazine Ban Law, the Citizen Plaintiffs would suffer irreparable and immediate harm resulting from the Government's deprivation of their private property without providing compensation, or providing them with a procedure or method of keeping their property via grandfathering rights. Should the Magazine Ban Law remain in place, the Citizen Plaintiffs would lose possession and ownership of their Standard Capacity Magazines as soon as they forfeited, transferred, or modified them to conform to law, and would not be compensated for their actions in destroying/forfeiting their property to conform to law. See *Andrus v. Allard*, 441 U.S. 51 (1979) (where the Supreme Court held a ban on the sale of previously lawfully acquired eagle feathers was not a taking, but expressed that the distinguishing factor in this case was that the owner was able to retain the right to possess and transport their property).

---

to customers within Rhode Island. The Business Plaintiff is now forced to remove and replace all Standard Capacity Magazines that come standard with new firearms with after-market magazines holding ten (10) rounds or less.

[2] Recently in light of *Bruen*, the United States District Court for The District of Colorado, in the case *Rocky Mountain Gun Owners v. The Town of Superior, et al.*, C.A. No. 1:22-cv-01685-RM, granted the Plaintiffs' request for a temporary restraining order against the Town of Superior for their enactment and enforcement of a local ordinance banning assault weapons and large capacity magazines. The Court granted the Plaintiffs' motion, with Judge Raymond Moore stating "the Court is unaware of historical precedent that would permit a governmental entity to entirely ban a weapon that is commonly used by law abiding citizens for lawful purposes, whether in an individual's home or in public."

Here, the Citizen Plaintiffs would be unable to retain possession of their lawfully acquired property, in addition to being prohibited to selling it, transferring it, etc. unlike in *Allard*. See *Horne,* 135 S. Ct. at 2429 (citing *Allard*, 444 U.S. at 65-66, 100 S. Ct. 318, 62 L. Ed. 2d 210) ("[A]llard is a very different case. As the dissent recognizes, the owners in that case retained the rights to possess, donate, and devise their property. In finding no taking, the Court emphasized that the Government did not 'compel surrender of the artifacts, and there was no physical invasion or restraint upon them,'" distinguishing the holding in *Horne* from *Allard* and emphasizing a *total dispossession* of private property is a Fifth Amendment taking.) As such, the State's enforcement of an unconstitutional statute that unequivocally violates the Fifth Amendment's Takings Clause "**unquestionably constitutes irreparable harm**." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976).

Additionally, should the Citizen Plaintiffs fail to forfeit their Standard Capacity Magazines within the one hundred and eighty (180) day period following the passage of the Magazine Ban Law, they would suffer irreparable and immediate harm resulting from being guilty of a felony, punishable by up to five (5) years in prison, or a five thousand dollar ($5,000) fine. Many individual residents of the State, including the Citizen Plaintiffs, would turn in their Standard Capacity Magazines during the interim period of one hundred and eighty (180) days from passage in order to avoid criminal penalties. Upon turning in their Standard Capacity Magazines, the Citizen Plaintiffs' property could be destroyed, lost, devalued, etc., and they may be unable to re-obtain their property should they forfeit their Standard Capacity Magazines prior to the determination of the constitutionality of the Magazine Ban Law. Federal Courts have previously granted injunctive relief to prevent these exact situations, finding that: "[T]he purpose of a temporary restraining order . . . or a preliminary injunction is to *'protect the status quo and to*

***prevent irreparable harm during the pendency of a lawsuit, ultimately to preserve the court's ability to render a meaningful judgment on the merits***." *J.O.P. v. Dep't of Homeland Sec.*, 409 F. Supp. 3d 367, 375 (D. Md. 2019) (quoting *Sun Microsystems, Inc. v. Microsoft Corp. (In re Microsoft Corp. Antitrust Litig.)*, 333 F.3d 517, 525 (4th Cir. 2003).

The Business Plaintiff conducts over ninety-five percent (95%) of its sales and revenue through its brick-and-mortar store-front, with a very small portion of its sales (and clientele) being through online retail. See **Exhibit C**, at ¶¶ 5-6. The Magazine Ban Law now prohibits the Business Plaintiff from selling Standard Capacity Magazines in its inventory to customers in its store-front, depriving the Business Plaintiff of all economically beneficial use of its inventory which consists of Standard Capacity Magazines. This inventory was purchased with the sole intention of sale, and the Magazine Ban Law serves as regulation which deprives the Business Plaintiff of all economically beneficial use of that inventory where it can no longer use that property for its intended purpose.

At its store in Harmony, Rhode Island, in the year 2021, the Business Plaintiff sold approximately Fifty-Thousand Dollars ($50,000) worth of firearms magazines (the vast majority of which were Standard Capacity Magazines). See **Exhibit C**, at ¶ 8. Further, there are several models of handguns which the Business Plaintiff has in stock right now for which it either: 1) cannot readily obtain magazines that hold ten (10) rounds or less; or 2) there are no magazines in production for those models that hold ten (10) rounds or less. See **Exhibit C**, at ¶ 7.

The revenue which the Business Plaintiff generates by the end of each year allows it to determine important aspects of their business, such as whether the business can afford to expand, hire more help, carry certain products, etc. See **Exhibit C**, at ¶ 9. By depriving the Business Plaintiff of a substantial portion of its business, the Magazine Ban Law creates a significant risk

of irreparable harm to the Business Plaintiff's continued operation as a store front, by depriving the business of any predictable projections of revenue, and/or future sales. See **Exhibit C**, at ¶ 15.

**III-    The Balance of Hardships Tips in The Plaintiffs' Favor.**

Injunctive relief is appropriate where the Plaintiff can establish "... the balance of the hardship tips sharply in favor of the Plaintiff." *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991).

It is clear that the State stands to suffer no hardship from the Magazine Ban Law other than the burden of enforcing such law. The Magazine Ban Law has intentionally been drafted to provide no compensation, nor grandfathering rights afforded to those who were in lawful ownership of Standard Capacity Magazines prior to the passage of the Magazine Ban Law. The State has taken upon itself to avoid any burden of adherence to the Constitution by relieving themselves of the just compensation requirements of the Fifth Amendment's Takings Clause.

The Plaintiffs stand to forfeit their lawfully acquired property without being afforded just compensation or due process of law. The Plaintiffs requests this Court consider the scenario, and understand that if injunctive relief is not granted, the State's action will violate several express Constitutional rights of the Plaintiffs in a flagrant manner. Should injunctive relief not be granted, the State will have been permitted to legislate with disregard to Constitutional safeguards designed to prevent this sort of legislation. Should the Magazine Ban Law remain in place, it is more than likely that the State will continue to legislate past the issue of firearms, and legislate to take any private property without providing just compensation when politicians determine it expedient to do so.

Finally, the Plaintiffs are representative of all Rhode Islanders who own Standard Capacity Magazines, in that the purchase and possession of these products was legal and wholly unrestricted

up and until June 21, 2022. Thus, the State cannot suddenly claim a harm from previously lawful conduct that is now deemed to be unlawful.

**IV-**    **Granting Injunctive Relief Is In The Public Interest, and Not Against It.**

The Legislature has presented no evidence whatsoever that banning Standard Capacity Magazines will be a solution that is tailored to reducing gun crimes in the State. Debates will continue to occur where proponents and opponents of the Magazine Ban Law assess an individual's "need" to own a Standard Capacity Magazine, versus the potential "danger" of Standard Capacity Magazines. In passing the subject law, however, the State has presented insufficient findings, evidence, instances, or occurrences from other states (or at the federal level), which show the effectiveness on the public's safety as a result of banning these items. In fact, during the Federal Assault Weapons Ban enacted by President Clinton in 1994, Congress chose to let the ban expire in 2004 after careful review of a Department of Justice study which indicated that the ban had produced ***"no discernable reduction" in gun violence*** throughout the country. Christopher S. Koper et al., *An Updated Assessment of the Federal Assault Weapons Ban*: *Impacts on Gun Markets & Gun Violence*, *1994-2003*, Rep. to the Nat'l Inst. of Justice, U.S. Dep't of Justice 96 (2004), *available* at https://bit.ly/3wUdGRE.

The public interest in Rhode Island does not benefit from the Magazine Ban Law remaining in place during the pendency of this lawsuit. Rhode Islanders have owned Standard Capacity Magazines by the thousands safely within the State for as long as they have been in production. Further, the only measurable harm which can be done, would be the State's enforcement of the Magazine Ban Law against law abiding citizens in ownership of these Standard Capacity

Magazines, which would increase the number of felons in the State who fail to comply, whether intentionally, negligently, or innocently[3] with the Magazine Ban Law.

In addition, the public interest will actually be harmed should this Court fail to grant the Plaintiffs' request for injunctive relief, as the public always holds an interest in the granting of injunctive relief where the injunction is aimed at the prevention of violating constitutional rights. See *ACLU Fund of Mich. V. Livingston Cty., 796 F.3d 636, 649 (6th Cir. 2015)*.

## <u>CONCLUSION</u>

**WHEREFORE**, for the reasons stated herein, the Plaintiffs request this Court grant the Plaintiffs' requested preliminary injunction to suspend the applicability of the Magazine Ban Law, or in the alternative, grant a temporary restraining order for the same.

Respectfully submitted,

**OCEAN STATE TACTICAL, LLC d/b/a BIG BEAR HUNTING AND FISHING SUPPLY; JONATHAN HIRONS; JAMES ROBERT GRUNDY; JEFFREY GOYETTE; and MARY BRIMER**
*By and through their counsel,*

/s/ Michael A.  Kelly
Michael A.  Kelly, Esq.  (#2116)
Dane E.  Ardente, Esq.  (#10263)
Thomas E. Romano, Esq. (#5425)
KELLY, SOUZA & PARMENTER, P.C.
128 Dorrance Street, Suite 300
Providence, RI  02903
Tel: (401) 490-7334 | Fax: (401) 490-7874
mkelly@ksplawpc.com

Dated: August 9, 2022

---

[3] The Magazine Ban Law provides for no exceptions for ordinary citizens in "possession" of a Standard Capacity Magazine after the one hundred and eighty (180) day grace period for forfeiture. Thus, as an example, someone who becomes in "possession" of a Standard Capacity Magazine via inheriting a deceased love one's home, cleaning out a deceased loved one's possessions, etc. now has no way of disposing of this Standard Capacity Magazine without committing a felony. This is just one of countless hypotheticals that are certain to occur, and will rob innocent people of their good record, potential livelihoods, and name in their community upon conviction of a felony they did not intend to commit.

## <u>CERTIFICATE OF SERVICE</u>

    **I HEREBY CERTIFY** that, on this 9th day of August, 2022, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. The document is available for viewing and downloading from the ECF system.

        Keith Hoffmann, Esq.
        Special Assistant Attorney General
        150 South Main Street
        Providence, RI 02903
        khoffmann@riag.ri.gov

                    */s/ Michael A. Kelly*
                    KELLY, SOUZA, & PARMENTER, P.C.