# Exhibit A

# 2022 -- H 6614 SUBSTITUTE A

========
LC003478/SUB A
========

# STATE OF RHODE ISLAND

## IN GENERAL ASSEMBLY

## JANUARY SESSION, A.D. 2022

_____

### A N   A C T

### RELATING TO CRIMINAL OFFENSES -- LARGE CAPACITY FEEDING DEVICE BAN OF 2022

**Introduced By:** Representatives Caldwell, Knight, Blazejewski, Kazarian, Craven,

McNamara, Felix, Ajello, McEntee, and Williams

**Date Introduced:** January 06, 2022

**Referred To:** House Judiciary

*(Attorney General/General Treasurer/Governor/Secretary of State/Lieutenant Governor)*

It is enacted by the General Assembly as follows:

1      SECTION 1. Title 11 of the General Laws entitled "CRIMINAL OFFENSES" is hereby

2  amended by adding thereto the following chapter:

3                                              **CHAPTER 47.1**

4                              **LARGE CAPACITY FEEDING DEVICE BAN OF 2022**

5      **11-47.1-1. Short title.**

6      This chapter shall be known and may be cited as the "Rhode Island Large Capacity Feeding

7  Device Ban Act of 2022."

8      **11-47.1-2. Definitions.**

9      As used in this chapter:

10     (1) "Federally licensed firearm dealer" means a person who holds a valid federal firearm

11    dealers license issued pursuant to 18 U.S.C. § 923(a).

12        (2) "Large capacity feeding device" means a magazine, box, drum, tube, belt, feed strip, or

13    other ammunition feeding device which is capable of holding, or can readily be extended to hold,

14    more than ten (10) rounds of ammunition to be fed continuously and directly therefrom into a semi-

15    automatic firearm. The term shall not include an attached tubular device which is capable of holding

16    only .22 caliber rimfire ammunition.

17        **11-47.1-3. Large capacity feeding devices prohibited.**

18        (a) No person, except for a federally licensed firearms dealer, shall manufacture, sell, offer

1    to sell, transfer, purchase, possess, or have under his or her control a large capacity feeding device,

2    except as otherwise authorized under this chapter. Any person convicted of violating the provisions

3    of this section shall be punished by imprisonment of not more than five (5) years, or by a fine of

4    up to five thousand dollars ($5,000), and the large capacity feeding device shall be subject to

5    forfeiture.

6        (b) The provisions of subsection (a) of this section shall not apply to:

7        (1) Any person who, on the effective date of this chapter, lawfully possesses a large

8    capacity feeding device; provided that, within one hundred eighty (180) days of the effective date

9    of this chapter the person:

10        (i) Permanently modifies the large capacity feeding device such that it cannot hold more

11    than ten (10) rounds of ammunition;

12        (ii) Surrenders the large capacity feeding device to the police department in the city or town

13    where the person resides in accordance with the procedures for surrender of weapons set forth by

14    the police department or the Rhode Island state police, or, if there is no such police department or

15    the person resides out of state, to the Rhode Island state police; or

16        (iii) Transfers or sells the large capacity feeding device to a federally licensed firearm

17    dealer or person or firm outside the State of Rhode Island that is lawfully entitled to own or possess

18    such a feeding device.

19        (2)(i) Any law enforcement officer exempt under §§ 11-47-9 and 11-47-9.1; or

20        (ii) A retired law enforcement officer exempt under §§ 11-47-9 and 11-47-9.1 who is not

21    otherwise prohibited from receiving such a feeding device from such agency upon retirement, and

22      who has a permit to carry pursuant to § 11-47-18(b).

23          (3) An active duty member of the Armed Forces of the United States or the National Guard

24      who is authorized to possess and carry such a feeding device.

25          SECTION 2. This act shall take effect upon passage.

========
LC003478/SUB A
========

LC003478/SUB A - Page 2 of 3

### EXPLANATION

### BY THE LEGISLATIVE COUNCIL

### OF

### A N   A C T

### RELATING TO CRIMINAL OFFENSES -- LARGE CAPACITY FEEDING DEVICE BAN OF 2022

***

1       This act would make it a felony for an individual to possess any semi-automatic firearm

2       magazine which is capable of holding more than ten (10) rounds of ammunition. A violation is

3       punishable by up to five (5) years imprisonment or a fine of up to five thousand dollars ($5,000).

4       There are limited exceptions for firearms dealers, law enforcement and military.

5           This act would take effect upon passage.

========
LC003478/SUB A
========

LC003478/SUB A - Page 3 of 3

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **OCEAN STATE TACTICAL, LLC d/b/a BIG** : | |
| **BEAR HUNTING AND FISHING SUPPLY;** : | |
| **JONATHAN HIRONS; JAMES ROBERT** : | |
| **GRUNDY; JEFFREY GOYETTE; and** : | |
| **MARY BRIMER** : | |
| *Plaintiffs,* : | |
| : | **Case No.: 1:22-cv-00246** |
| **v.** : | |
| : | |
| **STATE OF RHODE ISLAND,** : | |
| *Defendant.* : | |

### AFFIDAVIT OF PLAINTIFF, JONATHAN HIRONS

1.  I, Jonathan Hirons being a resident of 62 Hagerstown Road, Warwick, Rhode Island, make oath and affirm as follows:

2.  I am an individual who is lawfully permitted to purchase, own, and possess a firearm, and currently own at least one (1) firearm which is capable of accepting a magazine that can accept more than ten (10) rounds of ammunition, as defined by Chapter 47.1 of the Rhode Island General Laws as "Large Capacity Feeding Devices" (*hereinafter*, "Standard Capacity Magazines").

3.  Currently, I own at least one Standard Capacity Magazines, which I lawfully acquired prior to the passage into law of Chapter 47.1 of the Rhode Island General Laws, also known as the "Large Capacity Feeding Device Ban of 2022" (*hereinafter*, the "Magazine Ban Law").

4.  As an individual who owns at least one Standard Capacity Magazine, I am aware I am provided with one hundred and eighty (180) days from the date of the Magazine Ban Law's passage (June 21, 2022) to either 1) forfeit my Standard Capacity Magazine(s) to the local or state police; 2) transfer my Standard Capacity Magazine(s) to a Federally Licensed Firearms

Dealer ("FFL"); or 3) permanently modify my Standard Capacity Magazine(s) so they are no longer capable of accepting more than ten (10) rounds of ammunition.

5.      I am aware that the one hundred and eightieth day (180) after the passage of the Magazine Ban Law is December 18, 2022.

6.      According to the Magazine Ban Law, the State of Rhode Island ("State") will not provide me with any form of compensation for the Standard Capacity Magazines that I am required to forfeit, and will not allow me to remain in possession of my Standard Capacity Magazines which I acquired lawfully prior to the Magazine Ban Law's enactment.

7.      The Magazine Ban Law would ultimately cause me to become a felon if I did not forfeit, transfer or modify my Standard Capacity Magazines after December 18, 2022.

8.      But for the Magazine Ban Law, I would have acquired more Standard Capacity Magazines, and I would intend to transfer, forfeit or modify my Standard Capacity Magazine.

9.      Should the Magazine Ban Law remain in effect, I would suffer irreparable harm, as I would forfeit my Standard Capacity Magazines prior to the expiration of the one hundred and eightieth (180th) day out of fear from prosecution of a felony charge, therefore dispossessing myself of lawfully acquired property without just compensation.

10.     Should the Magazine Ban Law remain in effect, I will suffer irreparable harm from being unable to exercise my rights under the Second Amendment of either possessing or purchasing more Standard Capacity Magazines, and/or the firearms which accept Standard Capacity Magazines with the expectation I am able to use the Standard Capacity Magazines they usually come with.

11.     I believe my constitutional rights under the Fourteenth Amendment of the United States Constitution have been violated, as I have been deprived of participating in a previously

lawful use without due process of law, and my property is being deprived without due process of law.

12.     I believe my constitutional rights under the Fifth Amendment of the United States Constitution are being violated where the Magazine Ban Law is forcing me to completely dispossess myself of lawfully acquired private property without the State providing any kind of compensation.

13.     I believe my constitutional rights under the Second Amendment are being violated where the Magazine Ban Law is depriving me of my right to the instrumentalities necessary for exercising the right to keep and bear arms (i.e. the magazines necessary to use them).

14.     Should the Magazine Ban Law continue to be enforced, others similarly situated to myself, but who do not have the means, resources, or time to combat the Magazine Ban Law will suffer irreparable harm by being unable to fight legislation that is facially unconstitutional.

15.     The Magazine Ban Law causes the balance of hardship to tip sharply in favor of myself as opposed to the State if the Magazine Ban Law continues to be enforced, as I will suffer a deprivation of private property, a violation of my right to keep and bear arms, and violation of due process rights, all while the State will suffer no harm whatsoever, and accomplish a speculative goal of enhancing public safety through unconstitutional channels of legislation.

16.     The Magazine Ban Law, though framed as legislation to enhance public safety, is not in the public interest, as it is facially unconstitutional and serves as an attenuated benefit to public safety, all while violating my constitutional rights, and the rights of other Rhode Island citizens who lawfully acquired these Standard Capacity Magazines.

*{Signature Block Located On The Following Page}*

3

(Signed)

Jonathan Hirons

STATE OF RHODE ISLAND

COUNTY OF ___KENT___

On this 3rd day of August, 2022, before me, the undersigned notary public, personally appeared Jonathan Hirons, personally known to the notary to be the person who signed the preceding or attached documents in my presence, and who swore or affirmed to the notary that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public

(Official Stamp/Seal)

My Commission Expires: ___8/21/2___

4

# Exhibit C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

OCEAN STATE TACTICAL, LLC d/b/a BIG       :
BEAR HUNTING AND FISHING SUPPLY;          :
JONATHAN HIRONS; JAMES ROBERT             :
GRUNDY; JEFFREY GOYETTE; and              :
MARY BRIMER                               :
      *Plaintiffs,*                        :
                                :       **Case No.: 1:22-cv-00246**
      **v.**                               :
                                :
STATE OF RHODE ISLAND,                    :
      *Defendant.*                         :

## AFFIDAVIT OF ANDRE MENDES

1.      I, Andre Mendes, am the Principal for Ocean State Tactical LLC d/b/a Big Bear

Hunting and Fishing (*hereinafter*, "Big Bear") Supply make oath and affirm as follows:

2.      Big Bear is a store front location which engages in the sale of firearms and other

hunting and fishing supplies, and is further a legally licensed Federal Firearms Dealer ("FFL")

having a license number of 605007012L01220.  Big Bear is located at 401 Putnam Pike,

Chepachet, RI 02814.

3.      As part of Big Bear's business, sales, and general revenue, Big Bear is routinely

involved in the possession and sale of firearms magazines which hold in excess of ten (10)

rounds of ammunition, as defined in the newly enacted Chapter 47.1 of the Rhode Island General

Laws (*hereinafter*, the "Magazine Ban Law") which defines "Large Capacity Feeding Devices"

(*hereinafter*, "Standard Capacity Magazines").

4.      As part of Big Bear's business, sales, and general revenue, Big Bear is routinely

involved in the possession and sale of firearms that come from the manufacturer equipped with

magazines which hold in excess of ten (10) rounds of ammunition, as defined in the newly

enacted Chapter 47.1 of the Rhode Island General Laws which defines "Large Capacity Feeding Devices".

5.      To the best of my knowledge, and upon inspection of Big Bear's business records, ninety five percent (95%) of our sales and revenue are from in store brick-and-mortar sales from our store front location

6.      To the best of my knowledge, and upon inspection of Big Bear's business records, five percent (5%) of our sales and revenue are from channels separate from our store front, such as online retail sales.

7.      The Magazine Ban Law, as referenced in Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support has directly effected Big Bear by banning magazines having a capacity to hold more than ten (10) rounds of ammunition, as we now cannot 1) sell existing inventory consisting of Standard Capacity Magazines; 2) order more Standard Capacity Magazines to sell in our store front; 3) sell firearms that come with a Standard Capacity Magazine without having to first remove the Standard Capacity Magazine from the sale of that firearm, and replace it with a magazine that accepts ten (10) rounds or less at our own cost; 4) sell certain firearms that only accept Standard Capacity Magazines and/or is a model of firearm that magazines limited to accepting no more than ten (10) rounds of ammunition are not made for.

8.      To the best of my knowledge, after review of Big Bear's business records, Big Bear sold roughly Fifty Thousand Dollars ($50,000) worth of firearms magazines, the vast majority of which were Standard Capacity Magazines, from their store front in 2021.

9.      The revenue which Big Bear generates annually allows me to determine important aspects of running the business of Big Bear, including but not limited to whether we can afford

to expand, whether we can afford to hire more help, whether we can carry certain products, and several other aspects.

10.     Neither the State, nor any representatives, officials, agents, and/or employees of the State have offered any means, program, manner, compensation, etc. to Big Bear for being deprived of our business in selling Standard Capacity Magazines in our store, and rendering worthless to our business the Standard Capacity Magazines we have in inventory as a result of the Magazine Ban Law.

11.     In order to dispose of our currently owned Standard Capacity Magazines in our inventory, we would be forced to invest time, money, and resources into sales through alternative channels to in store sales.

12.     Currently, Big Bear is equipped to do the vast majority of its business in-store, and would have to alter the entire business to dispose of the Standard Capacity Magazines in a manner that is not financially damaging to Big Bear.

13.     The Magazine Ban Law, as applied to business such as Big Bear, is a regulatory taking of my business, inventory, and future purchasing of inventory in violation of the Fifth Amendment to the United States Constitution.

14.     The Magazine Ban Law is violative of my Due Process Rights under the Fourteenth Amendment, as I am being deprived of property without due process of law, notice, or compensation.

15.     Should the Magazine Ban Law remain in effect, Big Bear will suffer irreparable harm resulting from 1) a violation of my constitutional rights via the takings clause of the Fifth Amendment; 2) Big Bear will suffer further financial harm from being unable to sell Standard Capacity Magazines in-store; 3) loss of business revenue previously enjoyed from being

3

prevented to sell a product that was previously lawful; 4) being forced to establish a retail presence elsewhere (most likely via online sales) in order to dispose of the Standard Capacity Magazines currently in inventory; and 5) inability to sell, or high unlikelihood of selling certain models of firearms to which customers cannot purchase, make, modify, etc. magazines accepting no more than ten (10) rounds for.

16.     The Magazine Ban Law causes the balance of the hardship to tip sharply in favor of Big Bear as opposed to the State if the Magazine Ban Law continues to be enforced, as Big Bear will suffer economic damages stemming from the State's deprivation of constitutional rights, lost business, and deprivation of revenue previously enjoyed revenue, and the State will be in no worse of a financial position, or authoritative position than it was prior to the enactment of the Magazine Ban Law.

17.     Should the Magazine Ban Law continue to be enforced, the State will have gone against public policy by legislating to violate the constitutional rights of Big Bear, private citizens, and other licensed FFLs within the State.

*{Signature Block Located On The Following Page}*

4

Andre Mendes, in my capacity as Principle

Ocean State Tactical, LLC

STATE OF RHODE ISLAND

COUNTY OF _Providence_

       On this 3rd day of August, 2022, before me, the undersigned notary public, personally appeared Andre Mendes, personally known to the notary to be the person who signed the preceding or attached documents in my presence, and who swore or affirmed to the notary that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public

(Official Stamp/Seal)

My Commission Expires: _9/27/22_

4