## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **OCEAN STATE TACTICAL, LLC d/b/a BIG** : <br> **BEAR HUNTING AND FISHING SUPPLY;** : <br> **JONATHAN HIRONS; JAMES ROBERT** : <br> **GRUNDY; JEFFREY GOYETTE; and** : <br> **MARY BRIMER** : <br> *Plaintiffs,* : <br> : <br> **v.** : <br> : <br> **PETER F. NERONHA, in his Official Capacity** : <br> **as the Attorney General for The State of Rhode** : <br> **Island; and DARNELL S. WEAVER, in his** : <br> **Official Capacity as the Superintendent of the** : <br> **Rhode Island State Police** : <br> *Defendants.* : | **Case No.: 1:22-cv-00246-JJM-PAS** |

## PLAINTIFFS' FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**NOW COME** the Plaintiffs, Ocean State Tactical, LLC d/b/a Big Bear Hunting and

Fishing Supply (*hereinafter*, individually "Big Bear" and/or the "Business Plaintiff"), Jonathan

Hirons (*hereinafter*, individually as "Mr. Hirons"), Mary Brimer (*hereinafter*, individually as "Ms.

Brimer"), James Robert Grundy (*hereinafter*, individually as "Mr. Grundy"), and Jeffrey Goyette

(*hereinafter*, individually as "Mr. Goyette") (*hereinafter*, collectively as the "Citizen Plaintiffs")

(*hereinafter*, Business Plaintiff and Citizen Plaintiffs, collectively as the "Plaintiffs") and hereby

bring this Complaint against the Defendants, Peter Neronha, in his Official Capacity as the

Attorney General for the State of Rhode Island, and Colonel Darnell S. Weaver, in his Official

Capacity as the Superintendent of the Rhode Island State Police (*hereinafter*, the "Defendants"),

for several causes of action relative to a recently passed law known as House Bill H6614, and

codified into Rhode Island Law as Rhode Island General Laws Chapter 47.1 "Large Capacity

Feeding Device Ban of 2022" (*hereinafter*, the "Magazine Ban Law"). The Plaintiffs assert, among

other things, that the Magazine Ban Law violates several constitutional rights, including, without limitation: 1) a violation of the Takings Clause of the Fifth Amendment; 2) the Second Amendment; and 3) the Due Process Clause of the Fourteenth Amendment. Plaintiffs' assert that the Magazine Ban Law is unconstitutional on its face, and as applied. In support thereof, the Plaintiffs hereby state as follows:

### *Introduction*

On June 21, 2022, the Rhode Island General Assembly passed House Bill H6614, which was codified into Rhode Island Law as Rhode Island General Laws Chapter 47.1 "Large Capacity Feeding Device Ban of 2022" (*hereinafter*, the "Magazine Ban Law"), which made it unlawful for citizens to possess "Large Capacity feeding devices"[1], which in sum, the Magazine Ban Law defines as any magazine capable of holding more than ten (10) rounds of ammunition (*hereinafter*, "Standard Capacity Magazine"). The Magazine Ban Law would prohibit anyone (subject to few exempt persons and/or entities) within the State of Rhode Island (*hereinafter*, the "State") from: 1) acquiring any magazine capable of holding more than ten (10) rounds of ammunition upon the date of the bill's passage; and 2) prohibit anyone from retaining possession of any magazines capable of holding more than ten (10) rounds of ammunition after one hundred and eighty (180) days of the date of the Magazine Ban Law's passage. Any violation of the Magazine Ban Law, including (i) the failure to forfeit any Standard Capacity Magazine to law enforcement, (ii) permanently modify any Standard Capacity Magazine to accept no more than ten (10) rounds, or

---

[1] House Bill H6614, codified in Chapter 47.1 of the Rhode Island General Laws, defines "Large capacity feeding device" as "[a] magazine, box, drum, tube, belt, feed strip, or other ammunition feeding device which is capable of holding, or can readily be extended to hold, more than ten (10) rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm. The term shall not include an attached tubular device which is capable of holding only .22 caliber rimfire ammunition." *See H6614A.*

(iii) transfer to a Federally Licensed Firearms Dealer ("FFL") any Standard Capacity Magazines within one hundred and eighty (180) days of the Magazine Ban Law's passage, carries a punishment "[b]y ***imprisonment of not more than five (5) years***, or by a fine of up to five thousand dollars ($5,000), and the large capacity feeding device shall be subject to forfeiture." *See* **Exhibit A**, a true and accurate copy of the Magazine Ban Law attached hereto. Further, in the "Explanation" portion of the Magazine Ban Law, the Legislature expresses that "This act would ***make it a <u>felony</u>*** for an individual to possess any semi-automatic firearm magazine which is capable of holding more than ten (10) rounds of ammunition." *See* <u>Id</u>.   This bill was signed by the Governor of Rhode Island, Dan McKee, on June 21, 2022 and codified into Rhode Law as Rhode Island General Laws Chapter 47.1 "Large Capacity Feeding Device Ban of 2022".

Standard Capacity Magazines are commonly owned devices used in an enormous amount of commonly produced, purchased, and owned firearms, with over half of the magazines owned and used in the firearms that will accept them in the United States being Standard Capacity Magazines. Prior to the enactment of the Magazine Ban Law, these Standard Capacity Magazines were common goods within the sphere of commerce, being sold and purchased legally at any Federally Licensed Firearms Dealer (*hereinafter*, "FFL") owned gun shop located within the State, online retail platforms, private sale, trade, and/or transfer between individuals. Further, these Standard Capacity Magazines have been commonly owned, used, and possessed by individuals of Rhode Island, without incident, since the firearms which they are used in conjunction with have been available on the consumer market. The availability and use of these firearms spans back to the World War I and World War II era of production of semi-automatic rifles with detachable magazines capable of holding more than ten (10) rounds. However, for the sake of simplification, the most common semi-automatic rifle on the consumer market, the AR-15, was first produced by

Colt in 1963, and has been available to Rhode Islanders (along with the Standard Capacity Magazines that accompany them) without unconstitutionally restrictive barriers since that time.

The Magazine Ban Law violates multiple constitutional provisions. First, it impermissibly burdens Plaintiffs' Second Amendment rights. The Second Amendment protects the right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes," *District of Columbia v. Heller*, 554 U.S. 570, 624-25 (2008), ***including the ammunition and <u>magazines</u>*** necessary to make them effective, see *Jackson v. City and County of San Francisco*, 746 F.3d 953, 967-68 (9th Cir. 2014); *Fyock v. Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015). Because the magazines that Rhode Island has now prohibited are "in common use … for lawful purposes like self-defense," the prohibition "cannot stand." *Heller*, 554 U.S. at 624, 636. There are millions of Standard Capacity Magazines owned by law abiding citizens throughout this country.

Further, the Magazine Ban Law also violates the Takings Clause of the Fifth Amendment to the United States Constitution, as the mandatory dispossession of Standard Capacity Magazines which were lawfully acquired prior to the effective date of the Magazine Ban Law is a direct governmental taking of private property without providing just compensation. By banning possession—in addition to sales and use—of magazines that were lawfully acquired and are presently lawfully possessed, the Magazine Ban Law constitutes a physical appropriation of property without just compensation that is *per se* unconstitutional. See *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015).

Finally, the Magazine Ban Law violates the Due Process Clause of the Fourteenth Amendment.  Banning magazines over ten (10) rounds is no more likely to reduce criminal abuse of guns than banning high horsepower engines is likely to reduce criminal abuse of automobiles. To the contrary, the only thing the ban ensures is that a criminal unlawfully carrying a firearm with

a magazine over ten (10) rounds will have a (potentially devastating) advantage over his law-abiding victim. The Magazine Ban Law raises particularly acute Due Process concerns because it criminalizes the continued possession of Standard Capacity Magazines that were lawful when acquired. See *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 541 (2005); *id*. at 548-49 (Kennedy, J., concurring). The Magazine Ban Law spans far beyond a firearms issue, and ***if left standing unchallenged, it would open the door to government's ability to acquire private property, and obviate a takings clause issue by legislating under the guise of "public safety" in times of public fear, media outrage, and great political discourse***. Whether the banning of Standard Capacity Magazines has a positive effect on the reduction of crime rates is debatable[2]. However, such debate does not change the well-established principle of constitutional rights relative to the Fifth Amendment, that ***the government may not take private property for public purposes without providing just compensation***.

Desiring to acquire, possess, use, and/or transfer these constitutionally protected firearm magazines for lawful purposes including self-defense, but justifiably fearing prosecution if they do, Plaintiffs respectfully request that this Court: (1) declare that the Magazine Ban Law infringes upon the Plaintiffs' constitutional rights; and (2) permanently enjoin the Defendants from enforcing the Magazine Ban Law to the extent it prevents law-abiding citizens of Rhode Island, like Plaintiffs, from acquiring, possessing, using, or transferring constitutionally protected arms, and reflects a clear government taking of private property without just compensation.

---

[2] The Department of Justice's 2004 study on the effects of crime during the Assault Weapons Ban of the Clinton Administration found that there was no discernable reduction of gun violence during the Assault Weapons Ban.

### *Jurisdiction and Venue*

1.      The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331, because the action arises under the Constitution and laws of the United States, thus raising federal questions. The Court also has jurisdiction under 28 U.S.C. § 1343(a)(3), 42 U.S.C. § 1983, and 42 U.S.C. § 1988 since this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs and usages of the State of Rhode Island and political subdivisions thereof, of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

2.      This Court is a proper forum under the *Doctrine of Ex Parte Young* as the Defendants are persons who, in their official capacities, are the persons charge with the duty of enforcement of the ongoing violation through the laws of the State of Rhode Island.  The Eleventh Amendment does not bar this action, as it is an action against State Officer(s) in their official capacitie(s) to restrain an ongoing violation of federal law.

3.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. §§ 1983, and 1988.

4.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### *Parties*

### Citizen Plaintiffs

5.      Plaintiff, Jonathan Hirons, is a resident of Kent County, Rhode Island. Plaintiff Mr. Hirons currently owns several Standard Capacity Magazines of which, his possession will be prohibited after one hundred and eighty (180) days after the passage of the Magazine Ban Law. Mr. Hirons owns these Standard Capacity Magazines and keeps it in his home for self-defense and

other lawful purposes. But for Rhode Island's newly enacted restrictions on magazines over ten (10) rounds and his reasonable fear of criminal prosecution for violating the Magazine Ban Law, Mr. Hirons would immediately acquire more of, and continuously posses his personal property, being the Standard Capacity Magazines, within Rhode Island for otherwise lawful purposes, including in-home self-defense. Mr. Hirons did not intend, desire, or plan to dispose of his lawfully owned private property prior to the Magazine Ban Law taking effect.

6.     Plaintiff, Mary Brimer, is a resident of Washington County, Rhode Island. Ms. Brimer currently owns several Standard Capacity Magazines, of which, her possession will be prohibited after one hundred and eighty (180) days after the passage of the Magazine Ban Law. Ms. Brimer owns these Standard Capacity Magazines and keeps it in her home for self-defense and other lawful purposes. But for Rhode Island's newly enacted restrictions on magazines over ten (10) rounds and her reasonable fear of criminal prosecution for violating the Magazine Ban Law, Ms. Brimer would immediately acquire more of, and continuously posses her personal property, being the Standard Capacity Magazines, within Rhode Island for otherwise lawful purposes, including in-home self-defense. Ms. Brimer did not intend, desire, or plan to dispose of her lawfully owned private property prior to the Magazine Ban Law taking effect.

7.     Plaintiff, James Robert Grundy, is a resident of Washington County, Rhode Island, Mr. Grundy currently owns several Standard Capacity Magazines of which, his possession will be prohibited after one hundred and eighty (180) days after the passage of the Magazine Ban Law. Mr. Grundy owns these Standard Capacity Magazines and keeps it in his home for self-defense and other lawful purposes. But for Rhode Island's newly enacted restrictions on magazines over ten (10) rounds and his reasonable fear of criminal prosecution for violating the Magazine Ban Law, Mr. Grundy would immediately acquire more of, and continuously posses his personal

property, being the Standard Capacity Magazines, within Rhode Island for otherwise lawful purposes, including in-home self-defense. Mr. Grundy did not intend, desire, or plan to dispose of his lawfully owned private property prior to the Magazine Ban Law taking effect.

8.      Plaintiff, Jeffrey Goyette, is a resident of Florida, but has a home in Newport County, Rhode Island, which he currently is in possession of several Standard Capacity Magazines that were previously owned by him prior to the enactment of the Magazine Ban Law, and have been at his Rhode Island home with him since prior to the enactment of the Magazine Ban Law. Mr. Goyette owns these Standard Capacity Magazines and keeps them in his home for self-defense and other lawful purposes. But for Rhode Island's newly enacted restrictions on magazines over ten (10) rounds and his reasonable fear of criminal prosecution for violating the Magazine Ban Law, Mr. Goyette would immediately acquire more of, and continuously posses his personal property, being the Standard Capacity Magazines, within Rhode Island for otherwise lawful purposes, including in-home self-defense. Mr. Grundy did not intend, desire, or plan to dispose of his lawfully owned private property prior to the Magazine Ban Law taking effect.

9.      Each of the Citizen Plaintiffs identified above seeks to keep, acquire, possess, and/or transfer magazines capable of holding more than ten (10) rounds for lawful purposes, including in-home self-defense, as is their right under the Second Amendment to the United States Constitution. Each of the Citizen Plaintiffs identified above is eligible under the laws of the United States and of the State of Rhode Island to receive and possess firearms.

10.      The Citizen Plaintiffs have further standing to challenge the Magazine Ban Law in this Court through pre-enforcement review of a criminal statute, as the Citizen Plaintiffs need not violate the Magazine Ban Law in order to have Article III standing where the Plaintiffs meet the injury requirement by showing "an intention to engage in a course of conduct arguably affected

with a constitutional interest, but proscribed by a statute, and . . . a credible threat of prosecution thereunder." *National Rifle Ass'n of America, Inc. v. McCraw*, 719 F.3d 338, 345 (2013) (quoting *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 60 L.Ed.2d 895 (1979).

### Business Plaintiff

11.     The Plaintiff, Ocean State Tactical, LLC, d/b/a Big Bear Hunting and Fishing Supply, is a business incorporated in the State of Rhode Island, having a storefront located in Providence County. The Magazine Ban Law renders consumer purchase of these Standard Capacity Magazines after its passage unlawful, leaving Big Bear with a substantial amount of inventory which cannot be used for the purposes in which it was bought. Further, there are many firearms which Big Bear has purchased sitting in inventory which do not come standard with, or do not accept any magazine capable of holding less than ten (10) rounds. Big Bear would be otherwise permitted to sell these products prior to the Magazine Ban Law, and was provided with no recourse from the State to dispose of this inventory prior to the Magazine Ban Law 's enactment.

### Defendants

12.     Defendant, Peter F. Neronha, is the Attorney General of the State of Rhode Island and is being sued in his Official Capacity, he is responsible for enforcing the State of Rhode Island's customs, policies, practices, and laws pursuant to Title 42, Chapter 9 *et seq*. of the Rhode Island General Laws. He is an Official charged with enforcement of to the State of Rhode Island's ban on Standard Capacity Magazines. Defendant Peter F. Neronha has a business address of the Office of Attorney General located at 150 South Main Street, Providence, RI 02903.

13.     The Defendant, Colonel Darnell S. Weaver, is the Superintendent of the Rhode Island State Police. Defendant Weaver is sued in his Official Capacity and is responsible for the

administration and enforcement of Rhode Island's customs, policies, practices and laws related to the State of Rhode Island's ban on Standard Capacity Magazines in Rhode Island, and particularly, those laws found under Title 11, Chapter 47 of the Rhode Island General Laws pursuant to R.I. Gen. Laws § 11-47-55. Defendant Colonel Darnell S. Weaver has an official address of the Rhode Island State Police, 311 Danielson Pike, North Scituate, RI 02857.

14.     The Defendants, are proper listed Parties to this action under the Doctrine of *Ex Parte Young* as the Eleventh Amendment does not bar actions against State Officers who are tasked with the duty to enforce the challenged State Law where the suit aims to restrain unconstitutional conduct perpetrated under color of State Law, and commencement in Federal Court is appropriate here. Further, the relief requested by the Plaintiffs in this matter is that of prospective injunctive relief, and seeks to enjoin ongoing violations of Federal Law and/or violations of the Plaintiffs' rights granted to them from the United States Constitution.

15.     The Defendants are tasked to enforce Rhode Island's restrictions on magazines capable of holding more than ten (10) rounds against Plaintiffs, and other Rhode Island citizens under color of State Law within the meaning of 42 U.S.C. § 1983 pursuant to the Doctrine of *Ex Parte Young*.

### *General Allegations*

16.     On June 21, 2022, the Governor of Rhode Island enacted the Magazine Ban Law into law, codified as R.I. Gen. Laws § 11-47.1-1 through 1-3, which provides that any Standard Capacity Magazine capable of accepting over ten (10) rounds of ammunition that may continuously be fed into a semi-automatic firearm must be forfeited, disposed, transferred, etc. within one hundred and eighty (180) days of the date of the Magazine Ban Law 's passage, with

10

noncompliance of such law being punishable by a felony, and up to five (5) years imprisonment, or a five thousand dollar ($5,000) fine. *See* **Exhibit A**.

17.     The Magazine Ban Law was signed into law on June 21, 2022 and codified as Chapter 47.1 of the Rhode Island General Laws.

18.     Under the law, any person in lawful possession of a magazine capable of holding more than ten (10) rounds, has until December 18, 2022 to: 1) Permanently modify the large capacity feeding device such that it cannot hold more than ten (10) rounds of ammunition; 2) surrender the large capacity feeding device to law enforcement; or 3) transfer or sell the large capacity feeding device to a federally licensed firearm dealer or firm <u>outside</u> the State of Rhode Island. Limited exceptions to this rule include licensed FFLs.

19.     The Rhode Island General Assembly, prior to the passage of the Magazine Ban Law, made expressly clear that the Magazine Ban Law ***would not allow those in lawful ownership of these Standard Capacity Magazines prior to the date of the Magazine Ban Law's enactment to have "grandfathering rights"*** to their lawfully acquired Standard Capacity Magazines, and would require disgorgement of those lawfully acquired Standard Capacity Magazines as well.

20.     The General Assembly, prior to the passage of the Magazine Ban Law, ***made expressly clear that the Magazine Ban Law would not provide any kind of compensation***, voucher, credit, or other exchange of consideration for the forfeiture of Plaintiffs' Standard Capacity Magazines.

21.     Though exempt from the Magazine Ban Law, the Business Plaintiff can no longer sell large swaths of their inventory (which was previously lawful to sell when acquired) to patrons who come into their store. Currently the Business Plaintiff has hundreds of Standard Capacity Magazines which they cannot sell in their store. The State has essentially given them the option

11

either to bear the financial misfortune of all Standard Capacity Magazines in their inventory suddenly becoming worthless and unusable, or to establish an online retail wing of their business in order to attempt to sell their inventory to citizens residing in states other than Rhode Island, where these Standard Capacity Magazines are legal to own. *See* **Exhibit B**, a true and accurate copy of the affidavit of Big Bear's principle, Andre Mendes attached hereto.

22.     Additionally, the Business Plaintiff, has a large quantity of rifles and handguns in stock which come new, from the manufacturer, with Standard Capacity Magazines, some of which (particularly some handguns), are not made to be adaptable to magazines with a capacity of under ten (10) rounds, effectively rendering several guns currently in the inventory possession of the Business Plaintiff worthless by the Magazine Ban Law and will not be able to be sold even though the firearms to which these Standard Capacity Magazines use are legal.

23.     Although they have not been deprived of being able to possess these Standard Capacity Magazines by the new law, the Business Plaintiff has been deprived of every other property right exercisable by an owner of their property with the enactment of the Magazine Ban Law (i.e. Big Bear cannot sell these magazines in their store, they cannot obtain compensation for their economic loss from the State, etc.).

24.     All Citizen Plaintiffs, currently own several Standard Capacity Magazines, all of which were lawfully acquired prior to the enactment of the Magazine Ban Law. *See* **Exhibit C**, a true and accurate copy of the Affidavit of Mr. Hirons attached hereto.

25.     All of the Citizen Plaintiffs are now forced to dispose of their privately owned, and legally acquired Standard Capacity Magazines by December 18, 2022, without receiving any compensation, or rights with or without conditions of continued ownership to keep their lawfully acquired property. Should the Citizen Plaintiffs not comply with this requirement, each can now

be ***convicted of a <u>felony</u>***, and potentially face five (5) years of incarceration. Further, certain firearms, due to the expiration of their production, and for other reasons, cannot be modified for use with a smaller capacity magazine.

26.     Should the Citizen Plaintiffs fail to forfeit their private property in the time period provided, they will be convicted of the highest class of punishment, normally reserved for crimes as abhorrent to law as robbery, burglary, murder, rape, arson, etc.

27.     Standard Capacity Magazines come standard with, or are commonly used in firearms that are "typically possessed by law-abiding citizens for lawful purposes," throughout the United States. *See Heller*, 554 U.S. at 624-25.

28.     Millions of firearms—including the most popular models—that come stock from the manufacturer with magazines over ten (10) rounds have been sold in the United States for several decades. People also buy such magazines aftermarket by the millions. Notwithstanding, Rhode Island's description of the prohibited magazines as being "large capacity," magazines with capacities of more than ten (10) rounds are, instead, standard-capacity for many common firearms that are lawfully possessed in the vast majority of states in the United States.

29.     While the Magazine Ban Law does not prohibit <u>all</u> detachable magazines – allowing for those with a capacity of ten (10) rounds or less – it does prohibit the size of magazines that are popular among the American public. Detachable Standard Capacity Magazines come standard with an overwhelming amount of new, in the box, handgun and rifle models throughout the country, and are widely accepted in other states. Estimates of Standard Capacity Magazines nationwide are in the tens of millions.

30.     Prohibiting law-abiding adults from acquiring, keeping, possessing, and/or transferring these commonly owned Standard Capacity Magazines implicates and violates their

Second Amendment rights. A total ban on standard-issue, commonly possessed magazines is not narrowly tailored to increasing public safety. Government action that limits the constitutional rights of its citizens is subject to heightened scrutiny by the Courts. There has been no evidence put forth by the General Assembly that the ban on Standard Capacity Magazines either 1) improves public safety; or 2) is the least means necessary to achieving the government's goal of heightened public safety.

31.     Plaintiffs are presently and continuously injured by Defendants' enforcement of the Magazine Ban Law insofar as the provision violates Plaintiffs' rights under the Second Amendment, the Takings Clause of the Fifth Amendment, and the Due Process Clauses of the Fourteenth Amendment of the United States Constitution, by precluding the acquisition, possession and use of Standard Capacity Magazines that are "typically possessed by law abiding citizens for lawful purposes" nationwide.

32.     If not enjoined by this Court, the Defendants will continue to enforce the Magazine Ban Law in violation of the Plaintiffs' constitutional rights. Plaintiffs have no plain, speedy, and adequate remedy at law. Damages are indeterminate or unascertainable and, in any event, would not fully redress any harm suffered by Plaintiffs because they are unable to engage in constitutionally protected activity due to the Defendants' ongoing enforcement of the Magazine Ban Law.

## COUNT I
### *(42 U.S.C. § 1983 Claim against Defendants for violation of the Plaintiffs' Second Amendment Rights under the United States Constitution for deprivation of their right to keep and bear arms)*

33.     Plaintiffs hereby restate and reallege the preceding Paragraphs of this Complaint, as if set forth fully herein.

34.     The Second Amendment to the United States Constitution declares that "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear arms shall not be infringed." *U.S. Const. Amend. II*.

35.     The United States Supreme Court has concluded that "[s]elf-defense is a basic right, recognized by many legal systems from ancient times to the present day, and … individual self-defense is 'the central component' of the Second Amendment right." *McDonald v. City of Chicago*, 561 U.S. 742, 767 (2010) (quoting *Heller*, 554 U.S. at 628). The Court has held that "a prohibition of an entire class of 'arms' that is overwhelmingly chosen by American society" is unconstitutional, especially when that prohibition extends "to the home, where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628.

36.     The "arms" protected by the Second Amendment are those "typically possessed by law abiding citizens for lawful purposes" today. See, e.g., *id*. at 624-25; see *also Caetano v. Massachusetts*, 136 S. Ct. 1027, 1027-28 (2016). The Second Amendment's protection also **includes the ammunition and magazines necessary** to meaningfully keep and bear arms for self-defense. See *Jackson*, 746 F.3d at 967-68; *Fyock*, 779 F.3d at 998. As such, the Second Amendment protects magazines and the firearms equipped with them that are in common use for lawful purposes.

37.     The Supreme Court has also held that the Second Amendment right to keep and bear arms is incorporated into the Due Process Clause of the Fourteenth Amendment and may not be infringed by state, and/or local governments. *McDonald*, 561 U.S. at 750.

38.     Further, in a Supreme Court Decision released on the date of this filing, the Highest Court in the land expressed "In keeping with Heller, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. **To**

15

justify its regulation, the *government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation*. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."" *New York State Rifle & Pistol Association, Inc., Et. Al. v. Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. 2111, 2126 (2022).

39.     In the Supreme Court Decision referenced above, the Highest Court expressed, on the day of the filing of this lawsuit, relative to the question of when State Legislatures infringe upon the Second Amendment, that "If the last decade of Second Amendment litigation has taught this Court anything, it is that Federal Courts tasked with making such difficult empirical judgments regarding firearm regulations under the banner of "intermediate scrutiny" often defer to the determinations of legislatures. **But while that judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—*it is not deference that the Constitution demands here. The Second Amendment 'is the very product of an interest balancing by the people' and it 'surely elevates above all other interests the right of law-abiding, responsible citizens to use arms' for self-defense*.** *Heller*, 554 U. S., at 635. **It is this balance—struck by the traditions of the American people—that <u>demands our unqualified deference</u>.**" *Bruen*, 213 L. Ed. 2d 387, 142 S. Ct. at 2131.

40.     The Magazine Ban Law prohibits Standard Capacity Magazines that come standard from the manufacturer with a lawful firearm, or are commonly used in firearms, that are typically possessed by law-abiding citizens for lawful purposes throughout the United States.

41.     The Plaintiffs, as well as many other individuals and entities have lawfully purchased the Standard Capacity Magazines prior to the enactment of the Magazine Ban Law which they currently possess.

42.     Prohibiting law-abiding citizens from selling, offering to sell, purchase, posses, or exercise control over Standard Capacity Magazines implicates and violates their Second Amendment rights under the United States Constitution.

43.     Though the new standard in *Bruen* certainly controls, if this Court, in the alternative reviewed the Magazine Ban Law under a heightened scrutiny standard of review, a blanket prohibition on Standard Capacity Magazines is not narrowly tailored to achieving the interests of the government in legislating to further public safety, and thus, fails the heightened scrutiny standard of constitutional analysis as well.

44.     Defendants' laws, customs, practices and policies generally banning the acquisition, possession, retention, etc. of Standard Capacity Magazines violates the Second Amendment to the United States Constitution, facially and as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

**WHEREFORE**, Plaintiffs request this Honorable Court enter an Order as follows:

a.     A declaratory judgment under 28 U.S.C. § 2201 that the Magazine Ban Law is unconstitutional on its face or, alternatively, to the extent that the prohibitions apply to law abiding adults seeking to acquire, use or possess Standard Capacity Magazines that  are in common use and ownership, as such law violates the individual right to keep and bear arms in violation of the Second and Fourteenth Amendment to the United States Constitution, unconstitutionally takes private property without just compensation in violation of the Takings Clause of the Fifth

Amendment, and/or arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause of the Fourteenth Amendment;

b.      An injunction permanently enjoining the Defendants from enforcing the Magazine Ban Law in its entirety, or, alternatively to the extent such can be segregated from the rest of the statute, any provision of the Magazine Ban Law that prohibits the acquisition, use, or possession of Standard Capacity Magazines among individuals;

c.      A declaration of the Magazine Ban Law is void and repealed from the statutory laws of the State of Rhode Island for its unconstitutionality;

d.      An award of remedies under 42 U.S.C. § 1983, including all costs incurred in seeking prospective relief, including but not limited to reasonable attorneys' fees, and other costs and expenses incurred by the Plaintiffs, pursuant to 42 U.S.C. § 1988, and/or any other applicable to law; and

e.      Granting such other and further relief as this Court may deem proper.

## COUNT II
***( 42 U.S.C. § 1983 Claim against the Defendants for taking of the Citizen Plaintiffs' private property without just compensation in violation of the Citizen Plaintiffs' rights under the Fifth Amendment's "Takings Clause" of the United States Constitution)***

45.      Plaintiffs hereby restate and reallege the preceding Paragraphs of this Complaint, as if set forth fully herein.

46.      The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." *U.S. Const. Amend. V*. The Takings clause applies to the states through the Fourteenth Amendment.

47.      The Takings Clause protects against the government's 1) direct "physical appropriation" of property, and 2) a restriction on the use of property, known as a "regulatory taking".

48.     When government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[3]. That rule applies to takings of both real and ***personal property***[4].

49.     The Citizen Plaintiffs acquired the Standard Capacity Magazines that they own legally, prior to the Magazine Ban Law.

50.     The Magazine Ban Law gives the Citizen Plaintiffs three (3) options for disposing of their property which was lawfully acquired. However, all three (3) options require the Citizen Plaintiffs to either (i) render their Standard Capacity Magazines into a separate piece of property, or (ii) disgorge themselves of their Standard Capacity Magazines in their entirety, otherwise face felony charges.

51.     The Defendants, have made expressly clear that the Magazine Ban Law does not provide: either 1) grandfathering rights to those individuals who lawfully acquired Standard Capacity Magazines prior to the passage of the Magazine Ban Law; nor 2) any compensation whatsoever for the mandatory disgorgement of a citizen's lawfully acquired Standard Capacity Magazines.

52.     The Magazine Ban Law does not merely take away an individual property right in which one can exercise in their "bundle of sticks" of property rights, but rather, completely deprives the Citizen Plaintiffs of the entirety of their property by mandating its forfeiture.

53.     By forcing the Citizen Plaintiffs who would otherwise keep their lawfully acquired property to instead physically surrender that property without government compensation, the Magazine Ban Law is a *per se* unconstitutional taking[5].

---

[3] *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 322 (2002).
[4] *Horne v. Dep't of Agric.*, 135 S. Ct. 2419, 2427 (2015).
[5] *See* Horne, 135 S. Ct. at 2427

54.     In the alternative, to the extent that the Magazine Ban Law does not constitute a physical taking, it is an unconstitutional regulatory taking.

55.     Defendants' laws, customs, practices, and policies which result in the taking of private property in violation of the Fifth Amendment's Takings Clause by banning the continued possession of previously lawfully acquired private property, and mandating the Citizen Plaintiffs to dispose of that lawfully acquired private property violates the Fifth and Fourteenth Amendments of the United States Constitution, facially against the Citizen Plaintiffs in this action, damaging the Citizen Plaintiffs in violation of 42 U.S.C. § 1983. The Citizen Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies and practices.

**WHEREFORE**, the Citizen Plaintiffs request this Honorable Court enter an Order as follows:

a.      A declaratory judgment under 28 U.S.C. § 2201 that the Magazine Ban is unconstitutional on its face or, alternatively, to the extent that the prohibitions apply to law abiding adults seeking to acquire, use or possess Standard Capacity Magazines that are in common use and ownership, as such law violates the individual right to keep and bear arms in violation of the Second and Fourteenth Amendment to the United States Constitution, unconstitutionally takes private property without just compensation in violation of the Takings Clause of the Fifth Amendment, and/or arbitrarily deprives Citizen Plaintiffs of protected property interests under the Due Process Clause of the Fourteenth Amendment;

b.      An injunction permanently enjoining the Defendants from enforcing the Magazine Ban Law in its entirety, or, alternatively to the extent such can be segregated from the rest of the statute, any provision of the Magazine Ban Law that prohibits the acquisition, use, or possession of Standard Capacity Magazines among individuals;

c.      A declaration of the Magazine Ban Law is void and repealed from the statutory laws of the State of Rhode Island for its unconstitutionality;

d.      An award of remedies under 42 U.S.C. § 1983, including all costs incurred in seeking prospective relief, including but not limited to reasonable attorneys' fees, and other costs and expenses incurred by the Plaintiffs, pursuant to 42 U.S.C. § 1988, and/or any other applicable laws; and

e.      Granting such other and further relief as this Court may deem proper.

## COUNT III
### *(42 U.S.C. § 1983 Regulatory Taking Claim against the Defendants for their regulatory taking of private property without just compensation in violation of the Business Plaintiff's rights under the Fifth Amendment's "Takings Clause" of the United States Constitution)*

56.     Plaintiffs hereby restate and reallege the preceding Paragraphs of this Complaint, as if set forth fully herein.

57.     The Takings Clause of the Fifth Amendment provides "nor shall private property be taken for public use, without just compensation." *U.S. Const. Amend. V.* The Takings clause applies to the states through the Fourteenth Amendment.

58.     The Takings Clause protects against the government's 1) direct "physical appropriation" of property, and 2) a restriction on the use of property, known as a "regulatory taking".

59.     A regulation that "goes too far", by depriving a property owner of all economically beneficial use, or otherwise interfering with legitimate property interests, is a taking under the Fifth Amendment, and requires just compensation.

60.     The Business Plaintiff, prior to the Magazine Ban Law, was permitted to sell Standard Capacity Magazines to its customers in their retail store located in the State of Rhode Island.

61.     The Business Plaintiff relied upon their ability to sell Standard Capacity Magazines, as well as firearms that only accept and/or come standard from the manufacturer with Standard Capacity Magazines as part of their business.

62.     The Business Plaintiff, purchased, and is now in possession of, hundreds of Standard Capacity Magazines in their inventory, and several firearms which either 1) come standard with Standard Capacity Magazines; and/or 2) only take Standard Capacity Magazines, with no current market option for magazines under ten (10) rounds.

63.     The Magazine Ban Law will effectively deprive the Business Plaintiff of their property by removing all economically beneficial use to the Standard Capacity Magazines in their inventory, and the firearms that only accept Standard Capacity Magazines, as the Business Plaintiff will be unable to sell them to anyone who walks into their store.

64.     The Business Plaintiff does not have the resources to establish a larger national-level online retail wing of their businesses, which the Magazine Ban Law would require them to do if they wished to sell the Standard Capacity Magazines in their current inventory[6].

65.     Defendants' laws, customs, practices and policies depriving the Business Plaintiff of all economically beneficial use of their private property through the Magazine Ban Law violates the Business Plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution, facially and/or as applied against the Business Plaintiff in this action, damaging the

---

[6] The surrounding states of Connecticut and Massachusetts have also banned any sale of Standard Capacity Magazines, and possession of Standard Capacity Magazines that were not acquired prior to the passage of their ban. Thus, the Business Plaintiff would not be able to sell (in their physical storefront location) to those in the immediate surrounding states, and would face issues with selling these Standard Capacity Magazines to individuals in other states, as they would have to travel through either Massachusetts or Connecticut with a firearm component that is prohibited in both states in order to arrive at their state of residence.

Business Plaintiff in violation of 42 U.S.C. § 1983. The Business Plaintiff is therefore entitled to preliminary and permanent injunctive relief against such laws, customs, policies, and practices.

**WHEREFORE**, Plaintiffs request this Honorable Court enter an Order as follows:

a.    A declaratory judgment under 28 U.S.C. § 2201 that the Magazine Ban Law is unconstitutional on its face or, alternatively, to the extent its prohibitions apply to law-abiding adults seeking to acquire, use or possess Standard Capacity Magazines that are in common use and ownership, as such law violates the individual right to keep and bear arms in violation of the Second and Fourteenth Amendment to the United States Constitution, unconstitutionally takes private property without just compensation in violation of the Takings Clause of the Fifth Amendment, and/or arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause of the Fourteenth Amendment.

b.    An injunction permanently enjoining the Defendants from enforcing the Magazine Ban Law in its entirety, or, alternatively, to the extent such can be segregated from the rest of the statute, any provision of the Magazine Ban Law that prohibits the acquisition, use, or possession of Standard Capacity Magazines among individuals.

c.    A declaration that the Magazine Ban Law is void and repealed from the statutory laws of the State of Rhode Island for its unconstitutionality.

d.    An award of remedies under 42 U.S.C. § 1983, including all costs incurred in seeking prospective relief, including but not limited to  reasonable attorneys' fees, and other costs and expenses incurred by the Plaintiffs, pursuant to 42 U.S.C. § 1988, and/or any other applicable law; and

e.    Granting such other and further relief as this Court may deem proper.

## COUNT IV
### (42 U.S.C. § 1983 Claim against the Defendants for violation of the Plaintiffs' Fourteenth Amendment Due Process Rights of the United States Constitution)

66.     Plaintiffs hereby restate and reallege the preceding Paragraphs of this Complaint, as if set forth fully herein.

67.     The Due Process Clause of the Fourteenth Amendment provides that "No state shall . . . deprive any person of life, liberty, or property, without due process of law." *U.S. Const. Amend. XIV*.

68.     The touchstone of Due Process is protection of the individual against arbitrary action of government[7].

69.     Thus, a statute that deprives an individual of life, liberty or property without furthering "any legitimate governmental objective" violates the Due Process Clause[8].

70.     The Supreme Court has held that legislation that changes the law retroactively – making conduct that was legal when undertaken illegal – is especially likely to run afoul of the Due Process Clause[9]. Specifically, if retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. Consequently, Due Process protection for property must be understood to incorporate our nation's settled tradition against retroactive laws of great severity[10].

---

[7] *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); see also, *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).
[8] . *Lingle*, 544 U.S. at 542.
[9] *See Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16-17 (1976); *E. Enterprs. v. Apfel*, 524 U.S. 498, 547-550 (1998)
[10] *E. Enterprs.*, 524 U.S. at 548-49.

24

71.     The Defendants denied Due Process due to the fact that the Magazine Ban Law enacted by the legislature was effective upon passage, and the Plaintiffs' were denied a hearing for Due Process and therefore deprived of their Constitutional and private property rights.

72.     A law which deprives an owner of private property without a permissible justification violates the Due Process Clause regardless of whether it also violates the Takings Clause[11].

73.     A law which deprives an individual and/or entity of their civil rights is subject to review under a heightened level of scrutiny, where it is the government's burden to show that the challenged statute is narrowly tailored to meet either an important or compelling governmental interest, and must be the least restrictive means necessary to accomplish the State's goal.

74.     The Magazine Ban Law makes criminal the Citizen Plaintiffs' right to continued possession of their lawfully acquired property (their Standard Capacity Magazines), without having first been provided with Due Process of Law. Prohibiting law-abiding adults from possessing lawfully acquired and commonly owned Standard Capacity Magazines based solely on their ability to accept more than ten (10) rounds does not further a "legitimate" or "substantial" governmental objective.

75.     Further, a portion of the Magazine Ban Law is both impermissibly vague and overbroad. Section 11-47.1-3.(b)(1)(i) provides that a person in possession of a Standard Capacity Magazine after the one hundred and eighty (180) days from the date of the Magazine Ban Law's passage who "Permanently modifies the large capacity feeding device such that it cannot hold more than ten (10) rounds of ammunition;" is exempt from the Magazine Ban Law. *See* **Exhibit A**.

---

[11] See *Lingle*, 544 U.S. at 541-42; *id*. at 548-49 (Kennedy, J., concurring).

76.    The Magazine Ban Law does not define what constitutes a "permanent modification" of a Standard Capacity Magazine, leaving large ambiguities to the individual as to what permanent modification entails.

77.    The Void-for-Vagueness doctrine prohibits enactments whose prohibitions are not clearly defined. Void-for-Vagueness requires that a law be defined with sufficient definiteness that ordinary people can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory effect.

78.    The Magazine Ban Law provides no express language which would define what permanent modification would mean, leaving open an impermissible level of discretion to enforcement authorities as to whether someone has permanently modified their Standard Capacity Magazine in an adequate fashion, or whether their modification is insufficient or, not permanent.

79.    The penalty for violation of the Magazine Ban Law is so draconian, that it must define with more definiteness what permanent modification requires. Otherwise, if the Citizen Plaintiffs decided to attempt permanent modification in a good faith attempt to conform their conduct to law, they could still be held to criminal penalty resulting from discretionary enforcement of the law.

80.    Defendants' laws, customs, practices, and policies under the Magazine Ban Law violate the Plaintiffs' Fourteenth Amendment Rights to the United States Constitution, facially and/or as applied against the Plaintiffs in this action, damaging Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against such laws, customs, polices, and practices.

**WHEREFORE**, Plaintiffs request this Honorable Court enter an Order as follows:

26

a.      A declaratory judgment under 28 U.S.C. § 2201 that the Magazine Ban Law is unconstitutional on its face or, alternatively, to the extent its prohibitions apply to law-abiding adults seeking to acquire, use or possess Standard Capacity Magazines that are in common use and ownership, as such law violates the individual right to keep and bear arms in violation of the Second and Fourteenth Amendment to the United States Constitution, unconstitutionally takes private property without just compensation in violation of the Takings Clause of the Fifth Amendment, and/or arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause of the Fourteenth Amendment.

b.      An injunction permanently enjoining the Defendants from enforcing the Magazine Ban Law in its entirety, or, alternatively, to the extent such can be segregated from the rest of the statute, any provision of the Magazine Ban Law that prohibits the acquisition, use, or possession of Standard Capacity Magazines among individuals.

c.      A declaration that the Magazine Ban Law is void and repealed from the statutory laws of the State of Rhode Island for its unconstitutionality.

d.      An award of remedies under 42 U.S.C. § 1983, including all costs incurred in seeking prospective relief, including but not limited to reasonable attorneys' fees, and other costs and expenses incurred by the Plaintiffs, pursuant to 42 U.S.C. § 1988, and/or any other applicable law; and

e.      Granting such other and further relief as this Court may deem proper.

## COUNT V
### (28 U.S.C. § 2201 Claim for Declaratory Judgment that the Magazine Ban Law violates the Plaintiffs' Constitutional Rights under the United States Constitution)

81.      Plaintiffs hereby restate and reallege the preceding Paragraphs of this Complaint, is if set forth fully herein.

82.     There is an actual and present controversy between the Parties to this lawsuit.

83.     The Citizen Plaintiffs contend that the Magazine Ban Law infringes on the Citizen Plaintiffs' right to keep and bear arms under the Second and Fourteenth Amendments of the United States Constitution, by generally prohibiting commonly possessed ammunition feeding devices that it deems "large capacity feeding devices".

84.     Plaintiffs also contend that the Magazine Ban Law violates the Takings Clause of the Fifth Amendment, as the State is now requiring owners who have lawfully purchased Standard Capacity Magazines prior to the enactment of the Magazine Ban Law to surrender physical possession of their property rather than allowing the Plaintiffs to keep their property in their possession, all without providing any compensation.

85.     The Magazine Ban Law deprives the Business Plaintiff of all economically beneficial use of their inventory consisting of Standard Capacity Magazines in violation of the Fifth Amendment's Takings Clause, via the Fourteenth Amendment.

86.     Plaintiffs further contend that the Magazine Ban Law violates the Due Process Clause of the Fourteenth Amendment by banning lawfully acquired magazines based on a feature (capacity to accept more than 10 rounds) that has no relation to enhancing public safety or any other valid governmental objective. Even if the Magazine Ban Law served some governmental goal in an attenuated manner, it still would not pass constitutional muster, as it is not the least restrictive means necessary and, thus, fails a heightened scrutiny analysis.

87.     The Defendants deny these contentions.

88.     Plaintiffs desire a judicial declaration that the Magazine Ban Law violates their Second, Fifth and Fourteenth Amendment rights afforded to them by the Constitution of the United States of America.

89.     Defendants' laws, customs, practices, and polices under the Magazine Ban Law violate the Plaintiffs' Constitutional Rights under the Second, Fifth, and Fourteenth Amendments to the United States Constitution, facially and/or as applied against the Plaintiffs in this action, damaging the Plaintiffs in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to a declaration declaring such laws, customs, policies, and practices unconstitutional.

**WHEREFORE**, Plaintiffs request this Honorable Court enter an Order as follows:

a.      A declaratory judgment under 28 U.S.C. § 2201 that the Magazine Ban Law is unconstitutional on its face or, alternatively, to the extent its prohibitions apply to law-abiding adults seeking to acquire, use or possess Standard Capacity Magazines that are in common use and ownership, as such law violates the individual right to keep and bear arms in violation of the Second and Fourteenth Amendment to the United States Constitution, unconstitutionally takes private property without just compensation in violation of the Takings Clause of the Fifth Amendment, and/or arbitrarily deprives Plaintiffs of protected property interests under the Due Process Clause of the Fourteenth Amendment.

b.      An injunction permanently enjoining the Defendants from enforcing the Magazine Ban Law in its entirety, or, alternatively, to the extent such can be segregated from the rest of the statute, any provision of the Magazine Ban Law that prohibits the acquisition, use, or possession of Standard Capacity Magazines among individuals.

c.      A declaration that the Magazine Ban Law is void and repealed from the statutory laws of the State of Rhode Island for its unconstitutionality.

d.      An award of remedies under 42 U.S.C. § 1983, including all costs incurred in seeking prospective relief, including but not limited to reasonable attorneys' fees, and other costs

and expenses incurred by the Plaintiffs, pursuant to 42 U.S.C. § 1988, and/or any other applicable law; and

      e.      Granting such other and further relief as this Court may deem proper.

                                        Respectfully Submitted,

                                        **OCEAN STATE TACTICAL, LLC d/b/a BIG BEAR HUNTING AND FISHING SUPPLY; JONATHAN HIRONS; JAMES ROBERT GRUNDY; JEFFREY GOYETTE; and MARY BRIMER**

*By and through their counsel,*

*/s/ Michael A. Kelly*
Michael A. Kelly, Esq. (#2116)
Dane E. Ardente, Esq. (#10263)
Thomas E. Romano, Esq. (#5425)
KELLY, SOUZA & PARMENTER, P.C.
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel: (401) 490-7334 | Fax: (401) 490-7874
*mkelly@ksplawpc.com*
*dardente@ksplawpc.com*
Dated: September 15, 2022               *tromano@ksplawpc.com*

## CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that, on this 15th day of September, 2022, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. The document is available for viewing and downloading from the ECF system.

    Keith Hoffmann, Esq.
    Special Assistant Attorney General
    150 South Main Street
    Providence, RI 02903
    khoffmann@riag.ri.gov

                                            */s/ Michael A. Kelly*
                                          KELLY, SOUZA, & PARMENTER, P.C.