UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OCEAN STATE TACTICAL, LLC, | : | |
| d/b/a BIG BEAR HUNTING AND | : | |
| FISHING SUPPLY; JONATHAN | : | |
| HIRONS; JAMES ROBERT | : | |
| GRUNDY; JEFFREY GOYETTE; | : | |
| and MARY BRIMER | : | |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | C.A. NO. 1:22-cv-00246-JJM-PAS |
| | : | |
| PETER F. NERONHA (official | : | |
| capacity), DARNELL S. WEAVER | : | |
| (official capacity) | : | |
| *Defendants.* | : | |

**STATE DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR LEAVE OF COURT TO FILE SUPPLEMENTAL BRIEFING**

Now come the Defendants, Peter F. Neronha and Darnell S. Weaver, in their official capacities only (hereinafter "State Defendants"), in response to Ocean State Tactical, LLC d/b/a Big Bear Hunting and Fishing Supply, Jonathan Hirons, James Robert Grundy, Jeffrey Goyette, and Mary Brimer's ("Plaintiffs'") supplemental briefing under this Court's text order of November 11, 2022, Fed. R. Civ. Pro. 7 and Local Rule Civil 7. Plaintiffs' supplemental briefing repeats arguments already fully addressed in the briefing in chief and provides no reason to find that large capacity magazines are arms or that they are not dangerous and unusual. Furthermore, the existence of firearms that could shoot more than one bullet at the Founding has no bearing on the historical analysis called for by *Bruen* because those firearms were experimental, no party contends that they were in *use* at the Founding, and they used entirely different firing mechanisms with different dangers and different utility than those posed and possessed by large capacity

1

magazines. Moreover, to the extent that Plaintiffs seek to introduce new evidence (sometimes without even an attempted citation), *e.g.* ECF 32, 6 (new assertion of 70 million or "hundreds" of millions of large capacity magazines circulating in the United States), those remarks should be disregarded by the Court in accordance with its November 11, 2022 order.

### A. LARGE CAPACITY MAGAZINES ARE NOT ARMS.

Plaintiffs provide no counter to the textual argument that large capacity magazines are not "arms" as that word was understood at the Founding and at the time of adoption of the Fourteenth Amendment. As Plaintiffs must admit, the Second Amendment extends only to "instruments that constitute bearable arms." *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111, 2132 (2022); *see also* ECF 32, 6. But a large capacity magazine is *not* a bearable arm. ECF 19, 29-31 (discussing the characteristics of large capacity magazines in depth). Both historic understandings of the difference between firearms and firearms accessories support this conclusion, ECF 19, 30, as does common sense—a large capacity magazine cannot be used as a weapon without the lower receiver or other constituent parts of a firearm.

Moreover, the law Plaintiffs cite stands only for the proposition that the Second Amendment right to bear arms implies a corollary to bear operable arms. *Fyock v. City of Sunnyvale*, 779 F.3d 991, 998 (9th Cir. 2015); *Jackson v. City & County of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014). That proposition simply has no bearing on whether or not an object falls within the category of "arms" protected by the Second Amendment. Plaintiffs here are not asserting a Second Amendment right in their lawful semiautomatic firearms; despite ample opportunity no individual plaintiff has averred that they possess a lawful firearm which cannot be operated with a 10-round capacity magazine or a permanently modified large capacity magazine. *See* ECF 8-1, 6-9; ECF 22-1, 90-93. And, just like silencers, large capacity magazines "generally

2

have no use independent of their attachment to a gun" and "'you can't hurt anybody with [one] unless you hit them over the head with it.'" *United States v. Hasson*, No. GJH-19-96, 2019 WL 4573424, at *2 (D. Md. Sept. 20, 2019), *aff'd*, 26 F.4th 610 (4th Cir. 2022), *cert. denied* __ S.Ct.__, 2022 WL 6572217 (Oct. 11, 2022). That is why the Tenth Circuit found silencers were not bearable arms protected by the plain text of the Second Amendment. *United States v. Cox*, 906 F.3d 1170, 1186 (10th Cir. 2018) ("A silencer is a firearm accessory; it's not a weapon in itself (nor is it 'armour of defence')."). Similarly, large capacity magazines are useless without a firearm to attach to and are "a firearm accessory" unprotected by the Second Amendment.

### B.   LARGE CAPACITY MAGAZINES ARE DANGEROUS AND UNUSUAL.

Without reference to *Bruen*, Plaintiffs attempt to shift the key test for whether a weapon is outside the scope of the Second Amendment because it is "dangerous and unusual." The Second Amendment's sweep does not indiscriminately encompass all weapons in common use—*Bruen* makes clear it extends only to those weapons "in 'common use' for *self-defense* today." *Bruen*, 142 S. Ct. at 2143 (quoting *Heller*, 554 U.S. at 627) (emphasis added). Plaintiffs seek to twist this standard, claiming without citation that it is instead "whether it is in common use among law abiding citizens." ECF 32, 4 (emphasis deleted). Plaintiffs then go on to misstate the law that every court since *Heller* has relied on statistical evidence to determine whether weapons are dangerous and unusual. While the Fifth Circuit, in 2016, did state that "[e]very post-*Heller* case to grapple with whether a weapon is 'popular' enough to be considered 'in common use' has relied on statistical data of some form," *Hollis v. Lynch*, 827 F.3d 436, 449 (5th Cir. 2016), the Seventh Circuit grappled with that data in order to reject it. *Compare Friedman v. City of Highland Park*, 784 F.3d 406, 408-09 (7th Cir. 2015) (rejecting numerosity argument) *with id.* at 411-12 (examining utility of weapons). In a later-decided case, the Fourth Circuit in *Kolbe v. Hogan* made

3

no reference to statistical evidence at all when considering the nature of large capacity magazines. *Kolbe v. Hogan*, 849 F.3d 114, 144, 145 (4th Cir. 2017), *abrogated by Bruen*, 142 S. Ct. 2111. The better-reasoned position is that whether a weapon is dangerous and usual is an inquiry that does not and cannot begin and end with numerosity of its possession. *See Worman v. Healey*, 922 F.3d 26, 35 n.5 (1st Cir. 2019), *abrogated by Bruen*, 142 S. Ct. 2111 (although not addressing the issue directly, recognizing the Seventh Circuit's reasoning on the numerosity point as sound).

Similarly, Plaintiffs' point that machine guns are banned because of their ability to automatically fire, *Staples v. United States*, 511 U.S. 600, 612 (1994), cannot bear the weight Plaintiffs place on it as a useful metric for determining what weapons are dangerous and unusual. While citing to the ability to automatically fire as the sole permissible distinguishing factor, ECF 32, 2-3, (which of course is not a characteristic of large capacity magazines because, as explained above, large capacity magazines cannot fire at all), Plaintiffs simultaneously admit that short-barreled shotguns, hand grenades, and pipe bombs, all of which do not possess any characteristic related to automatic fire, are correctly classified as dangerous and unusual. But Plaintiffs decline to identify the characteristic that unites them all, perhaps because those characteristics—that they are particularly dangerous, create unfair advantage in combat, and are not used in lawful self-defense—are characteristics shared with large capacity magazines. In fact, Plaintiffs helpfully point to the Fifth Circuit's identification of why "machine guns and pipebombs" are "in the same category"—it is because "both were 'primarily weapons of war and have no appropriate sporting use or use for personal protection.'" *Hollis v. Lynch*, 827 F.3d 436, 448 (5th Cir. 2016) (quoting *United States v. Jennings*, 195 F.3d 795, 799 n. 4 (5th Cir. 1999)). Large capacity magazines are in the same category, and have been, like the machineguns and pipebombs discussed in *Jennings*, 195 F.3d 799 n. 4, identified by the federal government as being weapons of war with no suitable

sporting purpose.[1]  *See* ECF 19, 39-40 (discussing this issue and citing to federal regulatory reports).  Large capacity magazines fall within the category of "dangerous and unusual weapons" because of their characteristics and the absence of any evidence, qualitative or quantitative, that firing more than ten rounds of ammunition without reloading is useful or necessary for self-defense purposes.

### C.  HISTORICAL CURIOSITIES DO NOT BEAR ON RELEVANT HISTORIC ANALOGS FOR THE LARGE CAPACITY MAGAZINE BAN.

Plaintiffs statement that "*Bruen* mandates that the Founding Era as [sic] the controlling time period," ECF 32, 9, for determining historic analogues is a frank misstatement of law.  *Bruen* came nowhere close to saying such a thing.  Instead, *Bruen* reiterated that the "scope" of the Second Amendment is "enshrined" by the understanding people had when they adopted it; "The Second Amendment was adopted in 1791; the Fourteenth in 1868." *Bruen*, 142 S. Ct. at 2136.  Moreover, *Bruen* recognized that it is possible that 1868 is the *more* relevant time period for understanding the scope of the Amendment; the majority "acknowledge[d] that there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope." *Id.* at 2138.  Moreover, all of this talk about timing is not the final word on the relevant time period from which to draw historic analogies; *Bruen* recognized that "unprecedented societal concerns or dramatic technological changes may require a more nuanced approach." *Id.* at 2132.

Plaintiffs have presented no evidence that any societal concerns equivalent to mass shootings existed at the Founding, or that any weapon in existence at the Founding posed such a

---

[1] While whether a weapon has a suitable sporting purpose has federal regulatory import, "the Second and Fourteenth Amendments protect an individual right to keep and bear arms *for self-defense*," and the Supreme Court has never held that the right extends to bearing arms for any other purpose.  *Bruen*, 142 S. Ct. at 2125.

threat. In fact, Plaintiffs' expert agrees that repeating technology was not "widely popular for use in war until the late nineteenth century." ECF 32, 9. In contrast, Professor Roth has provided evidence that the technology at the time was incapable of mass violence. *See* ECF 19, 10 (discussing this testimony regarding inefficiency of firing mechanisms). State Defendants have provided ample evidence that when technological innovation provoked societal mass violence, it has been met with prohibitive regulation throughout our history. ECF 19, 44-49.

## CONCLUSION

On these bases, and those articulated in State Defendant's opposition, ECF 19, Plaintiffs' motion for temporary restraining order, or in the alternative for preliminary injunction, should be denied.

Respectfully submitted,

PETER F. NERONHA
ATTORNEY GENERAL

*/s/ Sarah W. Rice*
Sarah W. Rice, Bar No. 10465
Keith Hoffmann, Bar No. 9874
Special Assistants Attorney General Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400, Extension 2054 / 1882
Fax: (401) 222-3016
SRice@riag.ri.gov
KHoffmann@riag.ri.gov

Attorneys for Defendants Peter F. Neronha and Darnell S. Weaver, in their official capacities

## CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that I filed the within via the ECF filing system and that a copy is available for viewing and downloading.  I have also caused a copy to be sent via the ECF System to counsel of record on this 18th day of November, 2022.

                                                      */s/ Sarah W. Rice*