**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| OCEAN STATE TACTICAL, LLC d/b/a BIG BEAR HUNTING AND FISHING SUPPLY; JONATHAN HIRONS; JAMES ROBERT GRUNDY; JEFFREY GOYETTE; and MARY BRIMER,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF RHODE ISLAND; PETER F. NERONHA, in his Official Capacity as the Attorney General for The State of Rhode Island; and DARNELL S WEAVER, in his Official Capacity as the Superintendent of the Rhode Island State Police,<br><br>*Defendants*. | No. 1:22-cv-00246-JJM-PAS |

**PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

***House Bill 6614***

1. Rhode Island House Bill 6614 ("HB6614") was passed by the Rhode Island House of Representative of June 10, 2022, and the Rhode Island Senate on June 14, 2022. Governor Dan McKee signed HB6614 into law on June 20, 2022. Rhode Island Legislative Report, HB6614 (2022), perma.cc/8E76-SENZ (Ex.1).

2. HB6614 makes it unlawful to "manufacture, sell, offer to sell, transfer, purchase, possess, or have under [one's] control a large capacity feeding device." R.I. Gen. Laws §11-47.1-3.

3. HB6614 defines "ammunition feeding device" as the part of the firing mechanism by which "ammunition [is] fed continuously and directly … into a semi-automatic firearm." R.I. Gen. Laws §11-47.1-2(2).

4. The statute defines "[l]arge capacity feeding device" to mean any "magazine, box, drum, tube, belt, feed strip, or other ammunition feeding device" that is "capable of holding, or can readily be extended to hold, more than ten (10) rounds of ammunition to be fed continuously and directly therefrom into a semi-automatic firearm," except for "attached tubular device[s] … capable of holding only .22 caliber rimfire ammunition." *Id.* §11-47.1-2(2).

5. That prohibition is criminal, and the penalties for violating it include "imprisonment of not more than five (5) years." *Id.* §11-47.1-3(a).

6. The only groups of people to whom HB6614 does not apply are to federally licensed firearms dealers, certain law-enforcement officers, and active-duty members of the U.S. Armed Forces or National Guard. *See id.* §11-47.1-3(b)(2-3),

7. Under HB6614, those who "lawfully possesse[d] a large capacity feeding device" before the law was enacted and still possessed one when it took effect also had to do one of three things within 180 days of the Act's passage: (1) permanently alter their feeding devices to hold no more than ten rounds; (2) surrender them to the police; or (3) transfer or sell them to a third party outside the state who may lawfully own them. R.I. Gen. Laws §11-47.1-3(b)(1).

8. The 180-day mark expired in December 2022.

9. HB6614 does not define "[p]ermanently modifies" or "ammunition" as used in R.I. Gen. Laws §11-47.1-3(b)(1)(i).

***Plaintiffs***

10. Plaintiff Jonathan Hirons is a resident of Kent County, Rhode Island. Dkt.12 ¶5.

11. Plaintiff Mary Brimer is a resident of Washington County, Rhode Island. Dkt.12 ¶6.

12. Plaintiff James Robert Grundy is a resident of Washington County, Rhode Island.

Dkt.12 ¶7.

13. Plaintiff Jeffrey Goyette is a resident of Florida, but has a home in Newport County, Rhode Island. Dkt.12 ¶8.

14. Before HB6614's enactment, and the expiration of HB6614's 180-day non-enforcement period, Plaintiffs Hirons, Brimer, Grundy, and Goyette each owned several ten-plus-round magazines and kept them in their Rhode Island homes, primarily for self-defense purposes. Dkt.12 ¶¶5-9.

15. But for HB6614, Plaintiffs Hirons, Brimer, Grundy, and Goyette would immediately acquire multiple 10-plus-round magazines for self-defense. Dkt.12 ¶¶5-9.

16. Plaintiff Ocean State Tactical, LLC, d/b/a Big Bear Hunting and Fishing Supply, is a business incorporated in the State of Rhode Island, having a storefront located in Providence County. Dkt.12 ¶11.

17. After the enactment of HB6614, Big Bear was left with a substantial amount of magazine inventory which could not be sold in Rhode Island. Dkt.12 ¶11.

18. There are also many firearms which Big Bear has purchased sitting in inventory which do not come standard with, or do not accept, any magazine capable of holding less than ten rounds. Dkt.12 ¶11.

19. But for HB6614, Big Bear would be permitted to sell 10-plus-round magazines to individuals other than those excepted by HB6614, §11-47.1-3(b)(2-3). Dkt.12 ¶11.

***Ammunition Feeding Devices***

20. Ammunition feeding devices, or magazines, feed ammunition into the firing chamber of a semiautomatic firearm. *See* Nicholas J. Johnson et al., *Firearms Law and the Second Amendment: Regulation, Rights, and Policy* 1984-85, 1994 (3d ed. 2021) (Ex.2) ("Semi-automatic

rifles store *and feed* their ammunition from a magazine." (emphasis added)).

21. A bullet will not fire from a semiautomatic firearm unless a magazine has fed it into the chamber—unless the user manually loads a new round into the chamber for each follow up shot. *See id.*; *see also* Magazine, *The American Heritage Dictionary of The English Language*, perma.cc/CL4D-XJJD (last visited Sept. 14, 2026) (Ex.3) ("A compartment in some types of firearms, often a small detachable box, in which cartridges are held to be fed into the firing chamber.").

22. Many modern handguns come standard with magazines that can hold more than ten rounds of ammunition. *See Gun Digest 2018* at 386-88, 408 (Jerry Lee & Chris Berens eds., 72d ed. 2017) (Ex.4).

23. Many modern rifles come standard with magazines that can hold more than ten rounds of ammunition. *See* Nat'l Shooting Sports Found. ("NSSF"), *Modern Sporting Rifle Comprehensive Consumer Report* 31 (July 14, 2022), perma.cc/A6BR-PQYV (Ex.5); *Gun Digest 2023* at 399-407 (Jerry Lee & Chris Berens eds., 77th ed. 2017) (Ex.6); Ex.2 at 1993.

24. According to recent reports, hundreds of millions of ammunition feeding devices that can hold more than ten rounds of ammunition have been sold in the United States in the past few decades alone. NSSF, *Detachable Magazine Report, 1990-2021* (2024), perma.cc/4VXU-DJWA (Ex.7); William English, *2026 National Firearms Survey: Results from the Second Wave, Including Current Ownership of AR-15 Style Rifles, Other "Assault Weapons," and Magazines that Hold More than 10 Rounds*, at 24-25 (Georgetown Univ., Working Paper: Aug. 2026), perma.cc/L535-DTQF (Ex.8).

25. According to English's 2026 report, tens of millions of American gun owners have purchased magazines that HB6614 bans. *See* Ex.8 at 32-34.

26. Moreover, English's 2026 report, among others, indicates and/or supports the proposition that "50.5% of gun owners, approximately 44.5 million adults, *currently* own magazines that hold more than 10 rounds." Ex.8 at 30; *see also, e.g.*, Ex.7; Ex.5 at 31 (reporting that 69% of detachable rifle magazines have a capacity of 20 or 30 rounds).

27. And according to English's 2026 report, the most common reasons cited for owning these arms are self-defense at home and about (88% of owners), recreational target shooting (64.6%), hunting (47.2%), prevention of animal attacks (32.4%), and competitive shooting sports (24.8%). Ex.8 at 31-32, 64-65 (noting use of firearms in more than 1.6 million "defensive incidents" annually).

***Lawful Uses of Ammunition Feeding Devices***

28. The most common reasons cited for owning ammunition feeding devices that can hold more than ten rounds of ammunition are self-defense at home and about (88% of owners), recreational target shooting (64.6%), hunting (47.2%), prevention of animal attacks (32.4%), and competitive shooting sports (24.8%). *See* Ex.8 at 31-32.

29. Numerous respondents in a recent survey reported facing scenarios "in which it would have been useful for defensive purposes to have a firearm with a magazine capacity in excess of 10 rounds." Ex.8 at 36, 73-76.

30. There are, unfortunately, many real-life and publicly reported instances in which civilians used more than 10 rounds to repel assailants. *See, e.g.*, Crime Prevention Rsch. Ctr., *Ten Cases Over The Last Few Years Where People Have Had To Fire Ten Or More Shots In Self Defense* (Oct. 22, 2020) (Ex.9) (providing inexhaustive list where "dozens" or more shots were fired in self-defense); *see also, e.g.*, G. Halek, *Houston Concealed Carriers Unload on Armed Muggers—Why We Travel in Packs*, Concealed Nation (Dec. 21, 2015), perma.cc/X33S-89KZ

(Ex.10) (victim of attempted robbery emptied a 12-round magazine when shooting two assailants); Gus G. Sentementes & Julie Bykowicz, *Documents Detail Cross Keys Shooting*, Balt. Sun (Mar. 21, 2006) perma.cc/PC7R-289A (Ex.11) ("gas station owner" defended himself and his business with "9 mm Glock semiautomatic pistol" by firing "at his [three] assailants 16 times"); *Gun Shop Owner Shoots, Kills Man During Attempted Robbery*, WIS TV (Aug. 9, 2012), perma.cc/P6ZT-KHT7 (Ex.12) (dealer defended himself and his property with AR-15 by "empt[ying] a 30 round magazine before retreating … to get more ammunition"); *Jewelry Store Burglarized, Scene of Deadly 1994 Robbery Attempt*, nbc12.com (2012), perma.cc/B3NN-CDSL (Ex.13) (describing "hail of bullets from employees and owners of [a] store" used in defense of self and property); Glenn Puit, *DA: Fatal Shooting In Parking Lot Was "Clear Case of Self-Defense*," Las Vegas Review-Journal (May 4, 2020), perma.cc/S787-8KWA (Ex.14) (describing altercation where victim "fired 11 times" in self-defense); Jacob Sullum, *The Threat Posed by Gun Magazine Limits*, Reason (Jan. 16, 2013), perma.cc/KQS2-HYS3 (Ex.15) (noting "there are various scenarios, including riots, home invasions, and public attacks by multiple aggressors, in which so-called large-capacity magazines can make a crucial difference," and highlighting the "shopkeepers in Koreatown" during the L.A. riots who had "'large-capacity' magazines to defend themselves and their property against rampaging mobs").

Respectfully submitted,

s/ Michael A. Kelly
Michael A. Kelly, Esq. (#2116)
KSPR Law, P.C.
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel: (401) 490-7334
Fax: (401) 490-7874
mkelly@ksprlaw.com

Matthew D. Rowen (admitted *pro hac vice*)
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
matthew.rowen@clementmurphy.com

*Counsel for Plaintiffs*

September 21, 2026

**CERTIFICATION**

I, the undersigned, hereby certify that I filed the within document via the ECF filing system and that a copy is available for viewing and downloading. I have also caused a copy to be sent via the ECF System to counsel of record on this 21st day of September 2026.

s/ Michael A. Kelly
Michael A. Kelly, Esq. (#2116)